AYRSHIRE COLLIERIES CORP. ET AL. *v.* UNITED STATES ET AL.

No. 467.   Argued April 7, 8, 1947.—Decided April 28, 1947.

*Earl B. Wilkinson* argued the cause for Ayrshire Collieries Corporation et al., appellants. With him on the brief were *Arthur R. Hall* and *J. Alfred Moran.*

*Carson L. Taylor* argued the cause for the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, appellant. With him on the brief were *William L. Hunter, A. N. Whitlock* and *M. L. Bluhm.*

*Daniel W. Knowlton* argued the cause for the United States and the Interstate Commerce Commission, appellees. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Berge, Edward Dumbauld, David O. Mathews, Nelson Thomas* and *Daniel H. Kunkel.*

*Charles W. Stadell* argued the cause for the Central Illinois District Coal Traffic Bureau et al., appellees. With him on the brief was *Erle J. Zoll, Jr.,* who submitted on brief for the Alton Railroad Company et al., appellees.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Appellants filed complaints in the United States District Court for the Southern District of Indiana seeking a temporary stay, an interlocutory injunction and a permanent injunction against the enforcement of an order of the Interstate Commerce Commission, dated July 9, 1945. This order had been entered in connection with findings by the Commission that certain railroad tariffs were unlawful and that other rates should be prescribed in lieu thereof. *Coal to Beloit, Wis., and Northern Illinois,* 263 I. C. C. 179.

The complaints requested that the court convene a specially constituted court of three judges, as required by the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 208, 220, 28 U. S. C. § 47, to hear the motions "for a temporary or interlocutory injunction and for final hearing in this proceeding." Circuit Judge Evans and Dis-

trict Judge Igoe were then assigned to sit with District Judge Baltzell to hear and determine these applications, and the cases were consolidated for all purposes. The applications for a temporary stay and an interlocutory injunction were assigned for hearing on January 3, 1946. But on that day, it appearing that the Commission had postponed the effective date of its order to April 8, 1946, the court ordered that "the hearing upon the petitioners' application for an interlocutory injunction and temporary stay heretofore assigned and set for January 3, 1946, be and the same hereby is, continued to the day of final hearing herein and that said final hearing shall be had on March 25, 1946 . . . ." The Commission made a further postponement of the effective date of its order to July 8, 1946, in order that the carriers subject to the order might avoid the necessity of preparing and filing new tariffs prior to the termination of the court proceeding. It also appeared that the illness of Judge Baltzell made it impossible for the court to convene as scheduled on March 25. And so the court reassigned the case for trial on April 22, with Judge Baltzell being replaced by Circuit Judge Major.

Argument was held on April 22 before Circuit Judges Evans and Major and District Judge Igoe at the "final hearing upon the plaintiffs' petitions for a permanent injunction." On June 5, 1946, findings of fact and conclusions of law were filed and entered under the signatures of Judges Major and Igoe; the Commission's order was sustained in all respects and a judgment was entered dismissing the complaints. The following notation was made in the margin of the findings of fact and conclusions of law: "Judge Evan A. Evans became ill subsequent to the hearing of these causes and he is and has been unable to participate in a determination thereof. The findings of fact, conclusions of law and judgment have therefore been entered by the remaining judges of such court."

The case was brought here on direct appeal.[1] We are of the opinion that the District Court's judgment was void, only two of the three judges having participated in the determination of the case. We accordingly do not reach the issues involving the Commission's authority and the merits of its order, issues that have been argued at length before us.

The applicable provisions of the Urgent Deficiencies Act, 38 Stat. 220, 28 U. S. C. § 47, state: ". . . No interlocutory injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any order made or entered by the Interstate Commerce Commission shall be issued or granted by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, unless the application for the same shall be presented to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a circuit judge, and unless a majority of said three judges shall concur in granting such application. When such application as aforesaid is presented to a judge, he shall immediately call to his assistance to hear and determine the application two other judges. . . . *Provided,* That in cases where irreparable damage would otherwise ensue to the petitioner, a majority of said three judges concurring, may, on hearing, . . . allow a temporary stay or suspension, in whole or in part, of the operation of the order of the Interstate Commerce Commission for not more than sixty days . . . and upon the final hearing of any suit brought to suspend or set aside, in whole or in part, any order of said commission the same requirement

---

[1] Urgent Deficiencies Act of October 22, 1913, 38 Stat. 208, 219, 220, 28 U. S. C. §§ 45 and 47a; Judicial Code § 238, as amended by the Act of February 13, 1925, 43 Stat. 936, 938, 28 U. S. C. § 345.

as to judges and the same procedure as to expedition and appeal shall apply. . . ."

The requirement that three judges hear and determine suits to enjoin or set aside Interstate Commerce Commission orders had its origin in the provisions of the Expediting Act of February 11, 1903, 32 Stat. 823. That Act required three circuit judges, or two circuit judges and a district judge, to hear cases brought by the United States to enforce the antitrust and commerce laws. This feature was then extended by the Hepburn Act of 1906, 34 Stat. 584, 592, to all suits brought to enforce or enjoin any order of the Interstate Commerce Commission, "including the hearing on an application for a preliminary injunction." The Act of June 18, 1910, 36 Stat. 539, created the Commerce Court and vested in it jurisdiction over suits to enjoin Commission orders; that court was composed of five judges, four of them constituting a quorum and at least three being required to concur in all decisions. Finally, the Urgent Deficiencies Act of 1913 transferred this jurisdiction to three-judge district courts, as detailed above. *United States* v. *Griffin,* 303 U. S. 226, 232–233.

The policy of requiring the deliberation of three judges in suits to enjoin the enforcement of Interstate Commerce Commission orders is thus a well-established one. It is grounded in the legislative desire to guard against ill-considered action by a single judge in the important and complex situations frequently presented by Commission orders. Such matters are deemed to warrant the full deliberation which a court of three judges is likely to secure.

This requirement, of course, is necessarily technical. It is not a broad social measure to be construed with liberality. It is a technical rule of procedure to be applied as such. See *Phillips* v. *United States,* 312 U. S. 246, 250–

251.   While due consideration must be given to the statutory policy of expediting the disposition of applications to enjoin the enforcement of Commission orders, the plain language of the Urgent Deficiencies Act compels strict adherence to the command that such applications "shall be heard and determined by three judges, of whom at least one shall be a circuit judge."   And we must insist upon obedience to that legislative will even though the disposition of some applications may thereby be delayed.

When the framers of the Urgent Deficiencies Act declared that these applications "shall be heard and determined by three judges," we assume that they meant exactly what they said.   The requirement that three judges hear and determine an application means that they must adjudicate the issues of law and fact which are presented by the case, a function which implies that they must weigh the arguments and testimony offered by both sides and vote either to grant or deny the relief sought by the moving party.[2]   In addition, "Compliance with the statute

[2] In *Ohio* v. *United States*, 6 F. Supp. 386, affirmed, 292 U. S. 498, a case under the Urgent Deficiencies Act was argued before a court of three judges, all of whom participated in the discussions leading to a determination of the case.   One of the judges died before the decision was announced.   An opinion written by the judge who died was found among his papers after his death and was published as the opinion of the court, concurred in by the other two judges.   The opinion had been written pursuant to an arrangement made at a prior conference of the three judges.   The findings of fact and conclusions of law, which were filed some time after the opinion, were signed only by the two surviving judges.   The matter, however, was not raised by the parties on appeal and was not considered or decided by this Court.   The mere fact that the case was entertained by this Court is no basis for considering it as authoritative on the jurisdictional issue, it being the firm policy of this Court not to recognize the exercise of jurisdiction as precedent where the issue was ignored.   *United States* v. *More*, 3 Cranch 159, 172; *Snow* v. *United States*, 118 U. S. 346, 354–355; *Cross* v. *Burke*, 146 U. S. 82, 87; *Louisville*

requires the assent of the three judges given after the application is made evidenced by their signatures or an announcement in open court with three judges sitting followed by a formal order tested as they direct." *Cumberland Tel. Co.* v. *Public Service Commission,* 260 U. S. 212, 218. All three judges, in other words, must fully perform the judicial function.[3] See *Dohany* v. *Rogers,* 281 U. S. 362, 369–370.

It is significant that this Act makes no provision for a quorum of less than three judges. Two judges of a three-judge circuit court of appeals, on the other hand, ordinarily constitute a statutory quorum for the hearing and determination of cases.[4] 28 U. S. C. § 212. The absence of such a quorum provision as to three-judge district courts is a strong corroborating indication that participation by all three judges is necessary to render a valid decision.

---

*Trust Co.* v. *Knott,* 191 U. S. 225, 236; *Arant* v. *Lane,* 245 U. S. 166, 170.

Cf. *Frellsen & Co.* v. *Crandell,* 217 U. S. 71, where this Court, after Mr. Justice Brewer's death, adopted as its opinion one previously written by him.

[3] In *James* v. *Clements,* 217 F. 51, a case had been argued and submitted to a three-judge circuit court of appeals and a decision rendered by a divided vote. A petition for rehearing had been filed and the court had decided that the prior decision was erroneous and that the opposite result should be announced without further briefs or argument. But before an order to that effect could be promulgated, one of the judges died. Since the other two judges were divided in their views, the case was restored for argument before a full bench of three judges. See also *Ryan* v. *Pennsylvania Public Utility Commission,* 44 F. Supp. 912, 914.

[4] But see 32 Stat. 823, as amended by 58 Stat. 272, 15 U. S. C. (Supp. V, 1946) § 29, which provides that the senior circuit judge and the two circuit judges next in order of seniority shall "hear and determine" appeals from district court judgments in antitrust cases where this Court is unable to consider the appeals because of a lack of a quorum. *United States* v. *Aluminum Co. of America,* 148 F. 2d 416.

The Act provides, it is true, that a decision may be reached by a three-judge court if a "majority of said three judges" concur. But that means only that the decision of the three judges need not be unanimous; it does not imply that two judges alone may hear and determine the case.

Moreover, we cannot say that the failure of the third judge to participate in the determination of a case, where the other two are in agreement as to the result, is without significance. The decision reached by two judges is not necessarily the one which might have been reached had they had the benefit of the views and conclusions of the third judge. And should the latter have publicly indicated an opinion differing from that of his colleagues, his position might be helpful to the litigants and to this Court if the case were appealed.

It is readily apparent that this statutory requirement has not been met in this case. While all three judges of the specially constituted court heard the oral argument, only two of them participated in the determination of the case. The findings of fact, the conclusions of law and the judgment were all entered without the approval, concurrence or dissent of the third judge. He thus missed the very essence of the judicial function in this case—the actual adjudication of the issues of law and fact. All that we have here is an adjudication by two judges. But under the statute it is not enough that there be an adjudication by two judges. They lack any statutory authority to hear and determine an application to enjoin the enforcement of a Commission order. Any action of theirs in granting or denying such an application is as void as similar action by a single judge. See *Cumberland Tel. Co.* v. *Public Service Commission, supra,* 218–219; *Stratton* v. *St. Louis S. W. R. Co.,* 282 U. S. 10, 16.

It is suggested, however, that the three-judge requirement applies only to applications for interlocutory injunc-

tions against the enforcement of Interstate Commerce Commission orders; and since the decision in this case was one denying a permanent injunction, no complaint can be made that the decision was rendered by less than three judges. Reference is made in this respect to § 266 of the Judicial Code, 28 U. S. C. § 380, which deals with injunctions against the enforcement of state statutes or state administrative orders on the ground of unconstitutionality of the statute involved. Prior to 1925, that section indicated that a three-judge court was necessary only to pass upon applications for interlocutory injunctions. A single judge had jurisdiction to hear the cause on final hearing and to grant or deny a permanent injunction, thereby permitting him to reconsider and decide questions already passed upon by the three judges on the application for an interlocutory injunction. To end that anomalous situation, an amendment was added by the Act of February 13, 1925, 43 Stat. 938, to the effect that "The requirement respecting the presence of three judges shall also apply to the final hearing in such suit in the district court . . . ." The problem then arose as to whether the words "such suit" in this amendment referred only to a suit in which an interlocutory injunction was in fact sought or to a suit in which it might have been, but was not, requested. A series of decisions by this Court has made it clear that the former interpretation is the correct one. A three-judge court must be convened for final hearings on applications for permanent injunctions against the enforcement of state statutes only where an interlocutory injunction has been sought and pressed to a hearing. *Moore* v. *Fidelity & Deposit Co.,* 272 U. S. 317; *Smith* v. *Wilson,* 273 U. S. 388; *Public Service Commission* v. *Wisconsin Telephone Co.,* 289 U. S. 67; *McCart* v. *Indianapolis Water Co.,* 302 U. S. 419. Where an interlocutory injunction is not

sought and pressed, a single judge may hear and determine the application for a permanent injunction.

By analogy, it is claimed that the same rule should obtain under the Urgent Deficiencies Act, that a three-judge court should be necessary for final hearings on applications for permanent injunctions only where interlocutory injunctions have been sought and pressed. While it is admitted that an interlocutory injunction was sought in this case, the argument is made that the application was not pressed to a hearing, the need for such temporary relief having been eliminated by the postponement of the effective date of the Commission order. The whole emphasis of the Act, like that of § 266 of the Judicial Code, is said to be directed toward the prevention of improvident issuance of interlocutory injunctions or restraining orders. Since there was no such danger in this case, the conclusion is reached that the underlying reason for the convening of a three-judge district court is absent here.

The answer to this argument is to be found in the clear language of the Act itself. It provides simply: "and upon the final hearing of any suit brought to suspend or set aside, in whole or in part, any order of said commission the same requirement as to judges and the same procedure as to expedition and appeal shall apply." Unlike § 266 of the Judicial Code, there is no reference here to "such suit"—to a suit where an interlocutory injunction is sought and pressed. Rather there is an unambiguous reference to the final hearing of "any suit" brought to enjoin the enforcement of a Commission order. That can only mean any suit seeking permanent relief, regardless of whether interlocutory relief is also requested. And since "the same requirement as to judges" is to apply to the final hearing of any suit, three judges must hear and determine the matter.

In addition, this portion of the Urgent Deficiencies Act was part of the original enactment and was not added to meet a problem like that which arose under § 266 of the Judicial Code. It was drawn against a background of prior statutes which provided for injunctive relief against the enforcement of Commission orders without regard to the presence of a request for temporary relief. The Hepburn Act required a three-judge court for "all" suits brought to enjoin a Commission order, "including the hearing on an application for a preliminary injunction,"—a clear indication that a three-judge court was also necessary where only permanent relief was sought. And the statute which created the Commerce Court, from which the district courts inherited their jurisdiction in this instance, referred to "cases" brought to enjoin or set aside Commission orders, making no distinction as to those in which only permanent relief was sought. We can only conclude that the framers of the Urgent Deficiencies Act meant to require a three-judge court in any suit brought to enjoin the enforcement of a Commission order, including a suit where an interlocutory injunction is not sought and pressed to a hearing.

Time and again this Court has referred to the three-judge court requirement under this Act without making the distinction which has been made under § 266 of the Judicial Code. *Lambert Co.* v. *Baltimore & Ohio R. Co.,* 258 U. S. 377, 381–382; *Baltimore & Ohio R. Co.* v. *United States,* 279 U. S. 781, 784–785; *United States* v. *Griffin, supra,* 232–233. Indeed, without passing upon the precise problem, this Court has affirmed judgments of three-judge district courts which had granted permanent injunctions in cases where no interlocutory injunctions had been sought or pressed. See, *e. g., United States* v. *Idaho,* 298 U. S. 105. And see *Hudson & Manhattan R. Co.* v. *United States,* 28 F. Supp. 137, 140.

The language and background of the Act, which have been augmented by the consistent understanding of this Court,[5] thus combine to require the use of a three-judge district court in all cases in which a permanent or interlocutory injunction is sought against the enforcement of a Commission order. It matters not in a particular case whether an interlocutory injunction is requested or whether, if such relief is asked, the application is pressed to a hearing. This Act seeks to guard against more than an improvident issuance of interlocutory injunctions by single judges; it also seeks to prevent single judges from

---

[5] The same understanding, that the Urgent Deficiencies Act requires three judges for all applications to enjoin Commission orders while § 266 of the Judicial Code requires a three-judge court only for applications for interlocutory injunctions, is shown in the remarks of Mr. Justice Van Devanter at the Hearing before the Subcommittee of the Senate Committee on the Judiciary on S. 2060 and S. 2061, 68th Cong., 1st Sess., p. 33 (S. 2060 later became the Act of February 13, 1925):

"Section 238 as amended and reenacted in the bill would permit cases falling within four particular classes, and those only, to come from the district courts directly to the Supreme Court. The first and fourth classes are confined to antitrust and interstate commerce cases covered by the second section of the expedition act of February 11, 1903, and the provision in the act of October 22, 1913, respecting the enforcement, suspension, etc., of orders of the Interstate Commerce Commission. These cases are heard in the district court by three judges, one of whom must be a circuit judge. This and the character of the cases make it suggest that they should go directly to the Supreme Court rather than through the circuit courts of appeals. The third class is confined to cases wherein the enforcement of a State statute or of an order of a State board or commission is suspended by an interlocutory injunction. Applications for such injunctions are heard in the district court by three judges, one being a circuit judge. These injunctions now go directly to the Supreme Court for review, and the bill continues that procedure. . . ."

See also Mr. Justice Van Devanter's remarks at Hearing before House Committee on the Judiciary on H. R. 8206, 68th Cong., 2d Sess., p. 15.

issuing permanent injunctions.[6]  To that end, Congress has required the use of a three-judge court and we are bound to carry out the letter and the spirit of that requirement.  That two judges might, in a particular instance, give the same protection against single-judge action as three judges does not justify ignoring or relaxing the plain requirement that three judges hear and determine all applications to enjoin the enforcement of Commission orders.  If such an amendment to the Act is to be made, it must be made by Congress rather than by this Court.

Since the judgment entered by two judges in this case was void and without statutory authority, we have no alternative but to vacate the judgment and dismiss the appeal.  Appellants will be free, of course, to suggest that the District Court be reconvened in accordance with the Act so that three judges may hear and determine the application to enjoin the Commission order in issue.

*So ordered.*

MR. JUSTICE RUTLEDGE dissents.

---

[6] See also 50 Stat. 752, 28 U. S. C. § 380a, providing that no interlocutory or permanent injunction restraining the enforcement of, or setting aside, any Act of Congress on the ground of unconstitutionality shall be issued by a district court, unless the application shall be presented to a circuit or district judge and shall be heard and determined by three judges, of whom at least one shall be a circuit judge.