UNITED STATES, Appellee

v.

WLADIMIR PETROFF-TACHOMAKOFF, Private, U. S. Marine Corps, Appellant

5 USCMA 824, 19 CMR 120

No. 6139

Decided May·27, 1955

CDR Benjamin H. Berry, USN, for Appellant.
CDR Raymond W. Glasgow, USN, and CAPT Carl G. Lutz, USCMR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty by general court-martial of absence without leave in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680; sleeping while on post as a sentinel, and leaving his post before being properly relieved, both of the latter offenses in violation of Article 113, Uniform Code of Military Justice, 50 USC § 707. He was sentenced to a bad-conduct discharge, confinement for six months, and partial forfeitures of pay and allowances. The convening authority approved the findings and sentence, and a board of review, with but two members

present and participating in the decision, affirmed. We granted a petition for review to determine whether the board of review possessed the power to act in view of the absence of one member.

## II

While the case was pending before us, the accused moved to withdraw his petition. Some six days later, and prior to our action on the motion, he asked leave to withdraw his motion and pursue his original appeal to this Court. This second motion, which in net effect requests that we hear and decide the case, we grant without further comment.

The accused also moved for some form of appropriate relief, setting forth the following reasons for his request: That his sentence to confinement was adjudged on July 23, 1954; that by operation of law (Article 57 (b), Uniform Code of Military Justice, 50 USC § 638), the sentence began to run at that time and expired on December 29, 1954; that since the last mentioned date he has been restricted to the limits of the Marine Corps Recruit Depot, San Diego, California, awaiting the completion of appellate review; and that this restriction was not imposed because of any misconduct by him during or after his confinement, but solely because he exercised his right to appeal to this Court.

## III

The Government disputes some of the facts asserted by the accused and particularly that the restrictions were imposed because accused saw fit to take advantage of his right to appeal. To the contrary, the Government asserts that the accused breached the initial restriction imposed upon him; and that some form of restraint is presently necessary to make certain that all parts of the sentence can be executed if affirmed by us. We need not pause to reconcile the dispute, for we conclude a sufficient showing of probable cause to impose restraint is disclosed, and no action by us at the present time is either practicable or desirable.

**826**

Having served his period of confinement, the position of the accused was that of a person awaiting the completion of appellate review. It must have been known to him that if final review here resulted in an affirmance of his conviction, the bad-conduct discharge adjudged against him would be executed. Such action could not be taken prior to our decision on his appeal. Article 71(c), Uniform Code of Military Justice, 50 USC § 658. The time schedule shows that the case did not reach this Court until after the time the accused alleges he had served his confinement; and his complaint is directed toward being restrained while his appeal is being processed. We, of course, frown on any act by a person subject to the Code which has for its purpose the discouragement of the right to an appeal, and we are convinced that if a commanding officer confined an accused solely for that purpose, a prosecution under Article 97, 50 USC § 691, would lie. However, certain action on the part of the accused's commanding officer is demanded by the Manual, and action taken pursuant thereto is legal and proper.

The Manual for Courts-Martial, United States, 1951, paragraph 21d, page 26, provides:

"*Responsibility for restraint after trial.*—Upon notification from a trial counsel of the result of a trial (44e (2)), a commanding officer will take prompt and appropriate action with respect to the restraint of the person tried. Such action, depending on the circumstances, may involve the immediate release of the person from any restraint, or the imposition of any necessary restraint pending final action on the case."

Paragraph 89c (6), page 153, of the Manual is also pertinent here, and provides that:

". . . the convening authority will, [after trial and] unless he orders any approved sentence of confinement into execution and designates a place of confinement, provide in his action for the temporary custody of the accused pending final dis-

position of the case upon appellate review."

Within those provisions of the Manual may be found clear warrant for the taking, by commanders and convening authorities, of reasonable measures to insure the physical presence within their command of persons awaiting the completion of appellate review. We conclude that the restriction of this accused was no more than a reasonable measure to accomplish that result, and was, therefore, proper under the circumstances.

In United States v. Teague, 3 USCMA 317, 12 CMR 73, we were of the view that where an accused is awaiting action on a previously adjudged bad-conduct discharge, "probable cause" exists for the imposition of a status of arrest, within the meaning of Article 9(d), Uniform Code of Military Justice, 50 USC § 563. Restriction is normally considered to be a less severe restraint upon the free movement of an accused than arrest, Manual for Courts-Martial, United States, 1951, Appendix 12, page 538, and a reason which constitutes "probable cause" for the imposition of the greater restraint must also be regarded as a reasonable ground for the imposition of the lesser.

While this result may work a hardship in some individual cases, no other course is available—either to us or to the military—if reasonable grounds for restraint exist, and if the fundamental reform of appellate procedures envisioned by the Code is to be effectuated. To avoid unnecessary hardship, we think it desirable to process short-term cases expeditiously and all military agencies should work toward that end. In this instance, we have given priority to this appeal to serve that purpose. Before leaving the subject, we merely reiterate what is implicit in this part of our decision. The right of appeal is not to be impaired by commanders imposing punitive measures when they are unnecessary to protect the interests of the Government.

The motion for appropriate relief is denied.

## IV

We now turn to the issue which prompted our review. A review of the facts is unnecessary as the subject deals solely with the construction of an Act of Congress. Article 66, Uniform Code of Military Justice, 50 USC § 653, provides:

"(a) The Judge Advocate General of each of the armed forces shall constitute in his office one or more boards of review, each composed of not less than three officers or civilians, each of whom shall be a member of the bar of a Federal court or of the highest court of a State of the United States.

. . . . . .

"(f) The Judge Advocates General of the armed forces shall prescribe uniform rules of procedure for proceedings in and before boards of review and shall meet periodically to formulate policies and procedure in regard to review of court-martial cases in the offices of the Judge Advocates General and by the boards of review."

In reliance upon Article 66(f), supra, the Judge Advocates General promulgated Rule I, Uniform Rules of Procedure for Proceedings in and Before Boards of Review, DA Bull. No. 9, NAVEXOS P–932, AF Bull. 24, June 8, 1951, which reads as follows:

"I. QUORUM

"A majority of the members of a board of review will constitute a quorum for the purpose of hearing and determining any matter referred to the board. The determination of any matter referred to a board of review will be according to the opinion of a majority of its members. In the absence of a quorum the senior member present may make all necessary orders touching any proceedings pending in the board preparatory to hearing or decision thereof."

In his basic thrust, the accused contends that, in military law, the determination of what may constitute a quorum of a board of review is a matter of jurisdiction and not a rule of procedure. Thus, he argues that at least three duly appointed board of review members must hear and determine each case acted upon by such a body. In this argument, he assumes that the power to act is given to no less than the minimum number of members required to compose a board of review.

A few straws in the wind in some Federal and State cases point the direction we elect to follow. In Tobin v. Ramey, 206 F2d 505, 507 (CA5th Cir) (1953), the word "quorum," as used in 28 USC § 46(d), dealing with the composition of divisions of courts of appeals, was defined to mean "such a number of the members of the court as may legally transact judicial business." Somewhat different phraseology was used in Floyd v. Quinn, 24 RI 147, 52 Atl 880, 886 (1902), but the substance of the definition was the same, for it was there said that the term "implies a body capable of exercising the function of the whole body, not otherwise reserved."

As a general proposition, we adhere to the view that the determination of what number of members shall constitute a quorum is a question of procedure. That is to say, a question of "the mode of proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which, by means of the proceeding, the court is to administer. . . ." Black's Law Dictionary, 4th ed, pages 1367–1368.

The principle is not altered because a legislative body or a Constitution prescribes the number of members necessary to constitute a quorum. Neither does it matter that such a body expressly delegates to the created body or court the authority to prescribe for a quorum. Seiler v. O'Maley, 190 Ky 190, 227 SW 141, 142 (1921). Thus, Congress has expressly prescribed the number of judges necessary to constitute a quorum of the Supreme Court, 28 USC § 1; the Court of Appeals, 28 USC § 46; the District Courts when hearing an application for certain types of injunctions, 28 USC § 2284; the Court of Claims, 28 USC § 175; the Court of Customs and Patent Appeals, 28 USC § 215; and the Customs Court, 28 USC § 254. But Congress has also delegated to the District Courts the right to change, by court rule, the number of judges necessary to determine some cases. 28 USC § 132. In short, it may be said that the presence of a legislative statute which sets the quorum requirement for a court does not justify the conclusion that a rule prescribing the composition of a quorum is not a rule of procedure. Indeed, the Supreme Court seems to have expressly announced the opposite result.

In Ayrshire Collieries Corp. v. United States, 331 US 132, 67 S Ct 1168, 91 L ed 1391 (1947), consideration was given to one of the predecessor statutes of 28 USC § 2284, supra, requiring that district courts be composed of three judges for certain types of cases. En route to the ultimate holding that the legislative enactment was mandatory, the Supreme Court observed:

"This requirement [that three judges deliberate in suits to enjoin the enforcement of Federal administrative rulings], of course, is necessarily technical. It is not a broad social measure to be construed with liberality. It is a technical rule of procedure to be applied as such."

Passing on to the next logical step, let us assume a situation where Congress or a State legislature has not specifically decreed the number of members necessary to constitute a quorum. It is settled doctrine in such a case that a majority of the judges of a reviewing court may hold court in the absence of the minority. State v. Lane, 26 NC 434 (1844); Neff v. McKelvey, 134 Ohio St

47, 15 NE2d 770, 771 (1938); 21 CJS, Courts, § 183, page 292; 14 Am Jur, Courts, § 57, page 282. And this is precisely the kind of prescription which may be expressed in court rules, or the bylaws of any other deliberative assembly. Robert's Rules of Order, Revised, 1915, § 64, page 258. Yet it would be novel doctrine to hold that court rules could change a quorum requirement, if a question of jurisdiction were involved. Washington-Southern Nav. Co. v. Baltimore & P. S. B. Co., 263 US 629, 44 S Ct 220, 68 L ed 480 (1924); United States v. Bink, 74 F Supp 603, 615 (D Ore) (1947).

It is not material whether we consider boards of review as courts or administrative agencies. In Plymouth Coal Co. v. Pennsylvania, 232 US 531, 34 S Ct 359, 58 L ed 713 (1914), it was said that in the absence of clear statutory language to the contrary, a majority of the members of a board or commission organized for a public purpose may exercise the authority vested in the body. A quorum must be present, State v. Kelly, 27 NM 412, 202 P 524 (1921), but in the absence of a statute, a majority constitutes a quorum. Brown v. District of Columbia, 127 US 579, 8 S Ct 1314, 32 L ed 262 (1888). We, therefore, consider we announce sound law—in terms of both precedent and analysis—when we hold that the fixing of the number of members necessary to constitute a quorum is a procedural act. Such being our views, the rule promulgated by the Judge Advocates General was within the powers granted to them by Congress. Other compelling reasons buttress our holding in this regard.

V

Appellant contends, however, that whatever may be the view in civilian tribunals, in military law █ a board of review lacks jurisdiction to proceed if less than three members are present and participating in the decision. First of all, he points to the language of Article 66(a), supra, providing that each board of review must be composed of "not less than three" members. He compares that language with Article 16, Uniform Code of Military Justice, 50 USC § 576, which provides that general courts-martial shall be composed of "not less than five" members, and special courts-martial of "not less than three" members and notes the similarity of terms. He then refers to Article 67(a)(1), Uniform Code of Military Justice, 50 USC § 654, which provides that this Court "shall consist of three judges," and that, "The Court of Military Appeals shall have power to prescribe its own rules of procedure and to determine the number of judges required to constitute a quorum." Backed by these Articles, he argues that because similar phrases have been used with respect to the composition of courts-martial and boards of review, and dissimilar language with regard to the Court, the law governing courts-martial should be construed to apply to boards of review. Furthermore, argues he, because participation by the prescribed number of courts-martial members is regarded as jurisdictional, Manual for Courts-Martial, United States, 1951, paragraph 8, page 14, the same conclusion must be drawn with respect to boards of review. He asks us to apply the well-understood rule of statutory construction that when the same phrase is used in several sections of a statute, it is, in the absence of a clear intent to the contrary, presumed that Congress intended to give it the same content and meaning in each section. From all this, counsel for the accused contends we must conclude that Congress intended to deny a board of review the power to act if less than three members were present. But the difficulty with this contention is that it clashes head-on with other arguments which are supported by statutory aids that are equally, if not more, persuasive. Patently, the accused's argument gives no consideration to Article 29, Uniform Code of Military Justice, 50 USC § 593, which provides:

"(b) Whenever a general court-martial is reduced below five members, the trial shall not proceed unless the convening authority appoints new members sufficient in number to provide not less than five members. . . .

"(c) Whenever a special court-martial is reduced below three members, the trial shall not proceed unless the convening authority appoints new members sufficient in number to provide not less than three members. . . ."

That Article was "designed to insure, if a court falls below the set minimums, a man will not be convicted with less than these minimums." Hearings before the House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, page 1160, and a similar limitation was not applied to boards of review. In addition, a general grant of power to make rules of procedure for boards of review was given to the Judge Advocates General, Article 66(f), supra, and a more specific grant of power was given to this Court in the same field. Article 67(a)(1), supra. No similar authority was given to the courts-martial or to convening authorities. If we now apply another rule of construction urged by the accused, namely, that the presence of a provision in one section of a statute and its absence from another indicates a Congressional intention to exclude it from the latter, we find that a board of review is not prohibited from acting if less than three members are present and the Judge Advocates General are not prohibited from enacting a rule to that effect.

### VI

We need not select which of the previous rules better serves our purpose as other persuasive arguments exist to lead us to the conclusion that a board of review is not without authority to act if one member is not present. Congress expressly granted to the Judge Advocates General the power to call new boards of review into existence or to eliminate those determined to be unnecessary for the volume of business to be transacted. They were also given the right to select the members to man the necessary boards. Article 66(a), supra. It would seem unlikely, then, that Congress intended to deny them the lesser right to regulate the manner in which boards of review exercise their appellate powers, including the fixing of a quorum. Congress was aware that the workload involved was likely to vary, during times of war and peace, and it is not unreasonable to suppose that it also knew that death, illness, emergency leave, and other unforeseeable contingencies, might render it difficult to insure the deliberation of three board members in every case. Any two members necessarily control the decision in any case and it would be imposing an unwarranted burden on the Services to require them to maintain a "stand-by" reserve of persons as substitutes for members who are temporarily absent. To meet the test asserted by the accused, the Services would be required to do that or retard the processing of cases. Both of those results appear quite outside the Congressional intent expressed in the Code.

### VII

Perhaps the most persuasive argument against the contention of the accused is found in the history and development of the Uniform Code. Boards of review were first created within the Army establishment by a statute enacted in 1920. Article of War 50½, 41 Stat 787, 797 (1920); 10 USC § 1522 (1927). In 1948, Article of War 50, 50 Stat 627, 10 USC § 1521 (1948), replaced Article of War 50½, and was in existence at the time the Uniform Code was enacted. Both of those predecessor statutes provided that boards of review were to be composed of not less than three officers, and as early as 1921 The Judge Advocate General of the Army interpreted the law to mean that two members were sufficient to consti-

tute a quorum and hear and decide a case. CM 149737, Loescher, decided December 23, 1921. That interpretation was uniformly relied upon over the years. The 81 volumes reporting opinions of Army boards of review; the 12 volumes reporting decisions of the Army boards of review and Judicial Council; and the 4 volumes reporting Air Force opinions, all announcing decisions rendered under the laws prior to the Uniform Code, are filled with decisions where the boards of review were composed of three members, but only two participated.

Faced with that practice and the unchallenged interpretation for over a period of almost 28 years, Congress and the men who prepared the Code must have had knowledge of the construction placed upon the law by those who had the duty to enforce it. Yet they modified the terms of the previous enactment only enough to permit the use of civilians as board members, and to make the new Article applicable to all the services. Not one word was written which suggested a desire to veer from the method in vogue. What, then, is the effect to be given to such a re-enactment? Our belief is expressed in the following quotation from Sutherland, Statutory Construction, 3d ed, § 5109, as follows:

"Where a statute has received a contemporaneous and practical interpretation and the statute as interpreted is re-enacted, the practical interpretation is accorded greater weight than it ordinarily receives, and is regarded as presumptively the correct interpretation of the law. The rule here is based upon the theory that the legislature is acquainted with the contemporaneous interpretation of a statute, especially when made by an administrative body or executive officers charged with the duty of administering or enforcing the law, and therefore impliedly adopts the interpretation upon re-enactment. The United States Supreme Court has held that an administrative interpretation upon re-enactment has the force and effect of law."

We recognize that the force of the rule of construction must vary with the circumstances. Fishgold v. Sullivan Drydock and Repair Corporation, 154 F2d 785 (CA2d Cir) (1946), aff'd 328 US 775, 66 S Ct 904, 90 L ed 1004 (1946). Thus, if there is nothing to indicate that Congress gave detailed study to the re-enactment, there is less reason to suppose that it was aware of the interpretation. Similarly, if the interpretation was seldom used as a matter of practice, the same uncertainty of the applicability of the rule applies. Cf. United States v. Sutton, 3 USCMA 220, 11 CMR 220. But where, as here, the legislative history of the Code reveals that it was in the process of formulation for a considerable period of time by persons well familiar with the procedure used by the Army and the Air Force and that it was considered article by article and almost line by line by the appropriate Congressional Committee, the justification for applying this rule of construction becomes compelling. Thus, we feel no hesitancy in concluding that Article 66 (a), supra, must be read as approving and adopting the long-established administrative practice that two members of a board of review may hear and determine any case properly referred to the full board.

For the reasons set out, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.