**LOMBARD BROS., INC., et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. A. No. 9911.

United States District Court
D. Connecticut.

Feb. 11, 1964.

Hugh M. Joseloff and Thomas W. Murrett, of Joseloff, Murrett & Knierim, Hartford, Conn., for plaintiffs.

Thomas H. Ploss, Atty., Interstate Commerce Commission, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Robert C. Zampano, U. S. Atty., Dist. of Connecticut, New Haven, Conn., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, Washington, D. C.), for defendants.

Before SWAN and SMITH, Circuit Judges, and CLARIE, District Judge.

SWAN, Circuit Judge:

This case is before a three-judge court convened pursuant to applicable statutory provisions. 28 U.S.C. §§ 1336, 1398, 2284, 2321–2325.[1] It has been heard upon the complaint, the answers thereto, the record made in an administrative proceeding before the Interstate Commerce Commission and the briefs and arguments of counsel.

Lombard Bros., Inc., an interstate motor carrier operating from Philadelphia to Boston, and Everett M. Millis, doing business as Ayer Motor Express in the Boston area, herein referred to as "Ayer," seek to set aside orders of the Interstate Commerce Commission denying their application for purchase by Lombard of Ayer's rights and terminal facilities, and Lombard's application for a corresponding change in its own operating authority. They also object to a Commission order denying them a rehearing for the purpose of introducing additional evidence.

Ayer has a certificate of public convenience and necessity from the Com-

---

1. As originally constituted Judge Charles E. Clark was a member of the court. Because of Judge Clark's death before the case was decided, Judge Smith was appointed in his place. See Ayrshire Collieries Corp. v. United States, 331 U.S. 132, 67 S.Ct. 1168, 91 L.Ed. 1391.

mission that entitles it to operate as a common carrier on a regular service in general commodities over Massachusetts highway 2 between Boston and Fitchburg, a route running west and slightly north from Boston. In addition, Ayer possesses rights under the second proviso of the then section 206(a) (1) of the Interstate Commerce Act, 49 Stat. 551 (1935), as amended, 49 U.S.C. § 306(a) (1) (1958), whereby it can operate in interstate commerce over the same routes authorized by the Massachusetts Department of Public Utilities for intrastate commerce. These "proviso rights" include (1) regular-route authority over the same Route 2 as the I.C.C. certificate, but extending farther west to Williamstown; and (2) irregular-route authority to pick up and deliver general commodities, with certain exceptions, within 50 miles of the State House at Boston.

In January 1961 plaintiffs entered into a contract for the sale of Ayer's rights to Lombard. They have since disclaimed any rights to operations west of Orange, Mass. (about 50 miles east of Williamstown), on the regular route, or south of Massachusetts highway 106, on the irregular authority, since plaintiffs stipulated that Ayer's services in these areas had "lacked continuity." Lombard has been operating under Ayer's rights since March 1961 pursuant to temporary authority granted by the Commission pending final disposition of the applications.

In July 1960, Lombard entered into an interlining agreement with Ayer, whereby almost all freight carried interstate by Lombard, but coming from or destined for Boston-area points not on Lombard's routes, would be carried locally by Ayer. The freight would be "interlined" at Lombard's or Ayer's terminals in either Boston or Worcester. In support of their application for approval of the purchase, plaintiffs submitted a schedule of representative shipments carried by both carriers for the six months prior to the contract of sale; that is, from August 1, 1960 through January 1961. This schedule is required by Commission regulations. Various motor carriers in the Boston area filed objections and requested a hearing, which was held in Boston in July 1961.

In their letters of opposition the protestants had asserted that large parts of Ayer's authority had been dormant before its interline agreement with Lombard. They attempted to prove this by testimony from protestants' employees that Ayer had not served the area northeast or south of Boston, and had in fact refused requests to render service in these areas. They also tried on cross-examination of Millis to get an admission that Ayer had not served these areas. Millis made no such admission, but his statements about the frequency of the irregular-route service in the questioned areas were rather vague and unemphatic. The only documentary evidence of Ayer's service was the abstract of shipments from August 1 through January, mentioned above.

From this abstract the trial examiner noted that Ayer's operations expanded noticeably after August 12; for example, the Lowell-Lawrence-Haverhill area (northeast of Boston) did not appear in any shipments made during the first eleven days of August. From this evidence and from the oral testimony, the trial examiner concluded that Ayer's irregular-route authority had been partially dormant, with service only in the area west of U.S. highway 3 (running north to Lowell) and north of U.S. highway 20 (running west to Worcester). There was uncontroverted testimony that Lombard had leased to Ayer two tractor units, driven by former Lombard employees; that these drivers regularly called the Lombard dispatcher in Boston for orders on pick-ups by Ayer in the northeast area; that shippers in the disputed areas usually called Lombard directly instead of Ayer; that when Ayer collected C.O.D. charges from consignees for freight derived from Lombard for local delivery, Ayer always endorsed the checks directly to Lombard, rather than depositing them and drawing its own check, as was its custom with respect to other carriers with which Ayer interlined; that Lom-

bard itself billed directly the consignees or shippers that Ayer served. In addition, all freight carried by Ayer in the disputed areas was interlined with Lombard. From all this the trial examiner concluded that Lombard had "controlled" Ayer in violation of section 5(4) of the Interstate Commerce Act, 49 U.S.C. § 5(4), and that the interline agreement of July 1960 had been made for the purpose of building up Ayer's dormant rights.

■ It is settled I.C.C. policy that transfer of authority will not be granted where the two carriers have been guilty of violating the control provisions unless some overriding public need for the service is shown. The hearing examiner recognized that some advantage might accrue to shippers but concluded that the new service would unnecessarily increase competition, already keen in eastern Massachusetts, and that adequate, and substantially equivalent, service already existed. This policy has been recently sustained by the Supreme Court in Gilbertville Trucking Co. v. United States, 371 U.S. 115, 128–129, 83 S.Ct. 217, 225, 9 L.Ed.2d 177:

"* * * To approve a merger in the face of a § 5(4) violation may encourage others whose merger may or may not be consistent with the public interest to either present the Commission with a *fait accompli* or avoid its jurisdiction altogether. As the Commission pointed out in Central of Georgia, if such practices were encouraged, 'our administration of the statute in the public interest would be seriously hindered, if not defeated.' 307 I.C.C., at 44. This additional interest in the proper administration of the statute places upon the applicant a heavier burden than may be the case for other regulatory violations, and mere lack of willfulness or alleged innocence need not suffice.

"In fact, the Commission's rule is not automatic and will give way to a clear showing of public interest in approval."

■ Plaintiffs' assertion that the Commission's denial of the transfer of the admittedly active rights constitutes a "punishment" is immaterial, as the quotation above shows, since the hearing examiner found a deliberate attempt to build up dormant rights for the purpose of passing them off as bona fide and further found, on adequate evidence, no clear public need for the proposed service.

Plaintiffs further object that if the denial is based upon the "bad character" of Lombard, then the Commission has been inconsistent in granting Lombard permission to acquire certain other motor carriers in contemporaneous proceedings. If the Commission feels that denial of only the instant application will be sufficient punishment to keep Lombard from flirting close to the line of illegality, we can see no reason why its judgment should be disturbed.

■ Plaintiffs contend that the Commission's findings of dormancy and control are not based on substantial evidence. We think it sufficient. They also argue that the Commission should have made specific findings with respect to the issues enumerated in section 5(2) (c) of the Act, 49 U.S.C. § 5(2) (c), to which the Commission is required to "give weight" when passing on a proposed acquisition. In particular, plaintiffs claim that the Commission did not consider the fate of Ayer's employees, who will almost certainly be put out of work if the application is denied, since Ayer is insolvent and cannot continue operations on its own. The Commission and the hearing examiner did indeed note the probable effects of decision upon the employees, but obviously did not consider them sufficient to warrant a contrary result.

Plaintiffs' primary contention is that the Commission abused its discretion by refusing their application to reopen the hearing for the limited purpose of showing lack of control and dormancy. In their application they included an abstract of representative shipments by Ayer from June 1959 to May 1960. They contend that this evidence is "newly relevant" and establishes that Ayer's opera-

tions over the irregular-route territory were not dormant.

██ The Commission is entrusted with broad discretion with respect to new evidence. The Commission denied the request for further hearing with the observation that plaintiffs had failed to avail themselves of their prior opportunity at the hearing. Plaintiffs assert that the question of control was not raised until the hearing, and that they thus had no reason to prepare in advance of the hearing the evidence respecting shipments. But control by Lombard was charged by protestants at the hearing, so that plaintiffs could have asked then for leave to prove prior operations, when only a continuance would have been required. Moreover, if we take plaintiffs' abstract of shipments as an offer of proof, we find no convincing demonstration that they prove continuity of operations in the challenged areas. It is true that the trial examiner had only sketchy evidence on which to base his conclusions as to Ayer's bona fide operations, but the offer of plaintiffs fails to undermine his findings.

As already stated, we think the hearing examiner's findings as to dormancy of the rights in certain areas finds sufficient support in the evidence, as does his finding of control. It is true that plaintiffs were careful not to engage in certain of the practices that have previously led the Commission to find "control," but the very concept defies a hard-and-fast definition where the influence is exerted informally and orally.

The orders of the Commission should not be disturbed; accordingly the complaint is dismissed.

CLARIE, District Judge (dissenting).

I respectfully disagree with the majority, as to the propriety of the Commission's denial of a rehearing. Accordingly, I would remand the proceeding to the Commission for further hearing and grant leave to the Petitioners to introduce additional evidence.

Lombard's application was initiated on the usual standard form furnished by the Commission. It set forth the operational activities of the vendor carrier, Ayer, during the six months immediately preceding the application; but it did not provide for the inclusion of any earlier activities. This application provided the basis for the submission of evidence when the matter came before the Commission's hearing examiner. While a minimum of testimony was received from Lombard and the protesting carriers relating to the operations of Ayer, prior to the six-month period, no documentary evidence was presented for any time prior to August 1, 1960.

The examiner found that beginning August 12, 1960, the date of the interline agreement, Ayer's operations were subject to the control and management of Lombard. Therefore, the period between August 12, 1960 and February 1, 1961 was held not to be representative of Ayer's actual operations and not entitled to be considered as evidence on the application. The only period remaining for which data had been furnished, was the first eleven (11) days of August. Thus the subsequent finding that Ayer's provisional routes were dormant was predicated upon an analysis of unsubstantial evidence, a mere eleven (11) days of the vendor's operations. This is particularly significant because it was at a time during the summer respite, when business activities did not provide a representative indicia of normal operations.

This brief period alone provided the basis for the Commission's finding of dormancy; a fact admitted by counsel for the Commission before this Court. It is also set forth in the following excerpts from the Commission's written decision:

"With respect to the examiner's finding that the exhibit disclosed no service in the Lawrence, Lowell and Haverhill area (the northeastern area), during *the first 11 days of August,* but showed an abrupt change thereafter, \* \* \*" Lombard Bros., Inc.—Purchase—Everett M. Millis,

8–9 NC–F–7793 (Sept. 20, 1962). (Emphasis added).

"As to the first, our painstaking review of the entire record permits of no conclusion other than that these rights were virtually dormant for an *extended period* prior to August 12, 1960." Lombard, supra 10–11 (Emphasis added).

"Whereas evidence of operations in the *first 11 days of August* discloses a continuation of vendor's service to or from points on its regular routes as far west as Orange, with some few operations to points near the regular route within the narrow area west of U. S. Highway 3 and north of U. S. Highway 30 [sic; should be 20], the evidence of operations performed thereafter shows that this pattern underwent a decided change." Lombard, supra, 11. (Emphasis added).

In the dynamic and changing industry of over-the-road trucking, an analysis of a mere eleven (11) days is a grossly inadequate basis on which to deny or grant such an application. The finding of dormancy is not substantiated in fact or law. The majority opinion concedes "that the trial examiner had only sketchy evidence on which to base his conclusions * * *." "Sketchy evidence" is not a sound basis on which to sustain or deny legal rights.

"A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based. That requires 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. [of New York] v. National Labor Relations Board, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed. 126 (1938)." Matter of Stork Restaurant, Inc. v.

Boland, 282 N.Y. 256, 273–274, 26 N.E.2d 247, 255 (1940).

"Substantial evidence is more than a mere scintilla. * * * It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, supra, at 229, 59 S.Ct. at 217, 83 L.Ed. 126.

Where specially constituted district courts, such as this, are required to review orders of the Interstate Commerce Commission, the scope of review is limited, and if the Commission did not exceed the statutory limits of its discretion, and its findings are adequate and supported by evidence, courts will not upset its orders. McLean Trucking Co. v. United States, 321 U.S. 67, 87–88, 64 S.Ct. 370, 88 L.Ed. 544 (1943).

"Here, as in the case of orders of other administrative agencies under comparable statutes, judicial review is limited. It extends no further than to ascertain whether the Commission made an allowable judgment in its choice of the remedy. As applied to this particular type of case, it is whether the Commission abused its discretion * * *." Jacob Siegel Co. v. Federal Trade Commission, 327 U.S. 608, 611–612, 66 S.Ct. 758, 760, 90 L.Ed. 888 (1946).

Cognizant of this limitation on our review, this cause should be remanded for further consideration.

Lombard's subsequent application to the Commission for a rehearing, to permit the introduction of additional evidence was denied on the ground that Lombard had failed to avail itself of the opportunity to present such evidence at the original hearing. In view of the examiner's finding that the critical period from August 12, 1960 to February 1, 1961, was contaminated by Lombard's assumption of control, it became material to the eventual decision to investigate the period prior to the commencement of the interlining arrangement. In a very real

sense, then, the earlier period became "newly relevant".

Lombard's counsel had advised the applicants, based on their interpretation of the Commission's past decisions, that the relationship between Lombard and Ayer as demonstrated on the application form was legally valid. The majority concedes that the parties "were careful not to engage in certain of the practices that have previously led the Commission to find 'control'." Thus Lombard was taken by surprise and left naked with only eleven (11) days of proof, when the examiner rejected that period from consideration;[1] and that rejection was after the hearing had been concluded.

Unless it is to be assumed that the policy of the Commission [2] adopts a punitive aspect when it is found that the applicants violated the rules of the Commission, the denial of a rehearing appears arbitrary and an abuse of the discretion committed to the Commission by the statute. The record discloses that Lombard is a reputable and substantial motor carrier with extensive routes in several states, operating with the approval and under the aegis of the Commission. Since the instant denial, subsequent applications for the purchase and acquisition of additional routes by Lombard have been approved by the Commission.[3] The record is devoid of any subsequent action by the Commission of a punitive nature with respect to Lombard's existing certificates. It is apparent that the denial of the rehearing is limited to the single instance of unlawful control of Ayer during the six months preceding the filing of the application. And if such action can be characterized as "punitive" at all, it is in the sense that the six-month period was eliminated from consideration with regard to the application and nothing else, and most certainly not the denial of a rehearing.

As part of its application for a rehearing, Lombard submitted an abstract of representative shipments by Ayer from June 1959 to May 1960. It reflected Ayer's operations by showing the shipments of one day for each month during the period. It does not appear that this was anything more than a limited sampling of the evidence which would be produced at a rehearing. This sampling has been deemed to be an "offer of proof" and the majority has explored its weight and sufficiency and found that it does not buttress Lombard's claim for a rehearing. However, considering the limited size of Ayer's operation, both as to equipment and capital assets,[4] it does not appear as a matter of law that the facts submitted justify a reviewing court to substitute its judgment and analysis for that of the Commission's.

The granting of a rehearing would provide the petitioners with an opportunity to show whether or not the irregular routes were active prior to the finding by the Commission of control by the vendee. In remanding this proceeding to the Commission for further reference, it would not be my intention to influence the Commission's ultimate decision in this case. It should not necessarily affect the merits of the Commission's holding, unless after the evidence had been received, it was of the opinion that the facts warranted any change in its findings.

I would set aside the order of the Commission and direct it to take further proceedings consistent with this opinion.

1. It clearly seems that this is not a situation where counsel awaited a favorable decision on the strength of its initial offer of evidence as in United States v. Northern Pacific Ry., 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914 (1933). Although the issue of dormancy was raised by the protestant carriers at the hearing, counsel relied, in good faith, on its first offer because of the past precedents of the Commission.

2. Nowhere in the record does it appear that the Commission intended to adopt a punitive policy.

3. E.g., Lombard Bros., Inc.—Purchase (Portion)—McDevitt Transportation Co. (Nov. 4, 1963) No. MC–F–8520.

4. What should be expected from a Lilliputian of the industry, which agrees to sell its operating rights for $10,000 and part of its real property for $16,000?