UNITED STATES, Appellee,

v.

Edward L. ELLIOTT, Seaman Recruit,
U.S. Navy, Appellant.

No. 44,629.
NMCM No. 82–2381.

U. S. Court of Military Appeals.

May 9, 1983.

For Appellant: *Lieutenant Commander David S. Durbin,* JAGC, USNR (argued); *Captain W.J. Ciaravino,* USMC (on brief).

For Appellee: *Lieutenant Commander W.A. Dorsey,* JAGC, USNR (argued); *Commander W.J. Hughes,* JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was convicted by a special court-martial of various charges and sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, and partial forfeitures for a like period. The sentence was approved by the convening authority, although a portion of the confinement and forfeitures was suspended with provision for automatic remission. The supervisory authority approved the findings and sentence as approved and suspended by the convening authority.

Upon arrival at the United States Navy-Marine Corps Court of Military Review for appellate review pursuant to Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866, Elliott's case was assigned to Panel Two of that court, which then was composed of Judges Baum, Abernathy and Kercheval. On July 12, 1982, the Acting Judge Advocate General of the Navy appointed Commander Philip C. Barr as an appellate judge on the United States Navy-Marine Corps Court of Military Review. Two days later Chief Judge Cedarburg designated Commander Barr to sit on Panel

Two; simultaneously designated Judge Abernathy as the Panel's Senior Judge; and relieved Judge Baum as the Senior Judge, except for those cases in which he had previously participated.

Commander Barr, who theretofore had been assigned to the staff of a command at the Naval Air Station in Norfolk, Virginia, was detached from that assignment on July 6, 1982, and reported to the Navy-Marine Corps Appellate Review Activity (NAMARA) on the next day. However, Barr departed on leave from that organization at approximately 8:00 a.m. on July 12; and he did not return from leave until about 4:30 p.m. on July 30, 1982.

In the interim, appellant's case was decided on July 30 by Panel Two. Senior Judge Abernathy and Judge Kercheval joined in affirming the findings and sentence, while Barr was noted as "absent."[1] Then, on August 2, 1982, Commander Barr took his oath of office as a member of the United States Navy-Marine Corps Court of Military Review. This oath has customarily been administered to members of that court since its establishment on August 1, 1969. Appellant now claims that Panel Two should not have rendered its decision in his case until Commander Barr had been sworn in as an appellate military judge and actually had begun the performance of his duties in that position.

## I

In *United States v. Petroff-Tachomakoff,* 5 U.S.C.M.A. 824, 19 C.M.R. 120 (1955), our Court ruled that, pursuant to Uniform Rules of Procedure prescribed by the Judge Advocates General under Article 66(f) of the Code, 10 U.S.C. § 866(f), two members of a board of review would constitute a quorum for the purpose of hearing and determining any matters referred to a panel of the board. Thus, it was proper for a board of review to hear and determine a case with only two members participating in the decision. However, our decision

dealt only with a case decided when three members were serving on a panel, even though one of them had not participated in the decision.

Our Court referred to—and, by implication, distinguished—*Ayrshire Collieries Corp. v. United States,* 331 U.S. 132, 67 S.Ct. 1168, 91 L.Ed. 1391 (1947). There, the Supreme Court had held void a decision of a three-judge district court, when, by reason of illness, one of the judges was unable to participate in the determination of the case. As to an applicable statute which required that the case be decided by a three-judge court, the Supreme Court had acknowledged that:

> This requirement, of course, is necessarily technical. It is not a broad social measure to be construed with liberality. It is a technical rule of procedure to be applied as such.

*Id.* at 136, 67 S.Ct. at 1170. Nonetheless, the Court insisted upon obedience of the legislative mandate.

When our Court was established by the Uniform Code of Military Justice, Congress specifically provided:

> A vacancy in the court does not impair the right of the remaining judges to exercise the powers of the court.

Article 67(a)(1), 10 U.S.C. § 867(a)(1). This provision undoubtedly reflected congressional recognition that, due to delays sometimes involved in meeting the constitutional requirements for judicial appointment, a significant period of time might elapse during which our Court had less than its full number of judges.[2]

On the other hand, when Congress directed that "[e]ach Judge Advocate General shall establish a Court of Military Review which shall be composed of one or more panels, *and each such panel should be composed of not less than three appellate military judges,*" Article 66(a), 10 U.S.C. § 866(a) (emphasis supplied), no exception was made to the requirement that three

---

1. During the same period, some 30 other cases were decided in a similar fashion.

2. Indeed, in the recent past an interval of some seven months occurred during which only two judges were serving on our Court.

judges serve on a panel. Undoubtedly, Congress anticipated that it would be a simple matter for the Judge Advocate General of an Armed Service and the Chief Judge of its Court of Military Review to assure that any panel contained no less than three appellate military judges.

■ As Congress has unequivocally commanded that a panel of a Court of Military Review "be composed of not less than three appellate military judges" and has made no exception, as it did in establishing our own Court, we hold that a panel cannot lawfully operate during a time when it has less than three members.

## II

Since a panel must have at least three judges, we must determine whether Commander Barr was serving as a member of Panel Two within the contemplation of Article 66(a) when it rendered the decision in Elliott's case. In this connection, appellant places great emphasis on Barr's failure to take an oath before the decision was rendered.

Article VI of the United States Constitution directs that:

> The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution.

The Founding Fathers probably anticipated that taking an oath would serve to remind public officials of the seriousness of the duties being undertaken and so would induce better performance of those duties.

Consistent with this constitutional intent, Congress has required taking an oath as a prerequisite for assuming various positions. Judges of the United States are required to take an oath to perform the duties of their office. 28 U.S.C. § 453.[3] A commissioned officer in the Armed Forces must take an oath of office. 5 U.S.C. § 3331. Millions of Americans have taken an oath upon entry into the Armed Forces, see 10 U.S.C. § 502; and taking such an oath has been held to mark the commencement of military status. *Billings v. Truesdell,* 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944). *Cf. United States v. Ornelas,* 2 U.S.C.M.A. 96, 6 C.M.R. 96 (1952).

Article 42(a) of the Uniform Code, 10 U.S.C. § 842(a), directs that:

> Before performing their respective duties, military judges, members of a general and special courts-martial, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, reporters, and interpreters shall take an oath to perform their duties faithfully.

Even though many of the persons who are covered by Article 42 usually would be commissioned officers, who already had taken an oath of office, Congress obviously considered it important for them to take an additional oath upon assuming new responsibilities in connection with the administration of military justice.

The members of Courts of Military Review are referred to in Article 66(a) as "appellate *military judges.*" (Emphasis added). However, since the requirement of oaths for "military judges" appears in a Subchapter of the Uniform Code which concerns "Trial Procedure," Congress may not have intended that it apply at other than the trial level.[4] On the other hand, we do not perceive any reason why Congress would have excluded appellate military judges from the ambit of the oath requirement, since oaths are as familiar at the appellate level as at the trial level.

■ If Commander Barr had been present and had entered upon his duties as an appellate military judge, but by inadvertence had failed to take his oath of

---

3. Under 28 U.S.C. § 451, this requirement apparently applies only to judges of Article III courts. *Cf. United States v. Rachels,* 6 M.J. 232, 234 (C.M.A.1979).

4. *But see* Act of August 10, 1956, Pub.L. No. 84–1028, § 49(e), 70A Stat. 640, which states: "[N]o inference of a legislative construction is to be drawn from the part in which any article is placed."

office as a member of the Court of Military Review, we would need to decide whether taking the oath was an indispensable prerequisite for him to serve as an appellate military judge or whether, instead, taking the oath is only "ceremonial," as the Government now contends. However, in the present case the failure to take the oath was only one of several circumstances which indicate that Commander Barr had not begun to participate actively as a member of Panel Two. Of equal importance is his absence on leave from a date before his appointment to Panel Two until a time after the decision had been rendered in appellant's case. We are convinced that Commander Barr's connection with the Court of Military Review and with Panel Two was so attenuated that the three-judge requirement imposed by Article 66(a) was not satisfied.

### III

The Government argues that, even if Article 66 has been violated, this should make no difference in the outcome here, since two judges would constitute a quorum of the panel if it had possessed the necessary membership and, in fact, two judges joined in deciding appellant's case. We note, however, that, under similar circumstances, the Supreme Court declined to accept such an argument in *Ayrshire Collieries Corp. v. United States, supra,* and reversed the decision rendered by two judges when the applicable statute called for a three-judge court.

■ Furthermore, the Government's argument misses a vital point. When the Military Justice Act of 1968 [5] redesignated

Boards of Review as Courts of Military Review and conferred on members of those courts the title of "appellate military judges," Congress obviously intended to enhance the status of these tribunals and their members. Therefore, it is important that we not tolerate any practices which tend to detract from their status. In short, we must do all in our power to help assure that Courts of Military Review act like courts and that their members behave like judges.

■ When so little attention is given to a statutory requirement as appears to have been given in the present case, we conclude that the underlying congressional intent has not been fulfilled. Similarly, when so little attention is given to taking an oath of office—an oath which by statute or custom has been established for all appellate military judges [6]—we conclude that the wishes of Congress are not being carried out. Thus, we shall not speculate what the outcome might have been if Commander Barr had been serving as a member of Panel Two when appellant's case was decided. Instead, we simply hold that appellant was entitled to have his case decided by a tribunal that was established in accordance with the governing statute.[7]

### IV

Accordingly, we reverse the decision of the United States Navy-Marine Corps Court of Military Review and return the record of trial to the Judge Advocate General of the Navy for submission to that court for review in accordance with Article 66.

Judges COOK and FLETCHER concur.

---

**5.** Pub.L. No. 90–632, § 3(b), 82 Stat. 1335.

**6.** All the Courts of Military Review administer oaths of office to their members.

**7.** We are dealing here with a decision which was attacked on direct appeal. The result might be quite different if Elliott were collaterally attacking the decision of the Court of Military Review on the same grounds after appellate review had been completed.