Dr. Allen M. KREBS and Walter D. Teague III, on their own behalf and on behalf of all other persons similarly situated, Plaintiffs,

v.

John M. ASHBROOK, John H. Buchanan, Jr., Del Clawson, Joe R. Pool, Richard H. Ichord, William M. Tuck, George F. Senner, Jr., Charles L. Weltner, Edwin E. Willis, individually and as Chairman and Members of the Committee on Un-American Activities of the United States House of Representatives, David G. Bress, United States Attorney for the District of Columbia, Defendants.*

Civ. A. No. 2157-66.

United States District Court
District of Columbia.

Sept. 11, 1967.

---

* The Court takes judicial notice of the fact that the official position of several of

the defendants named at the time this complaint was filed has been changed.

112

Robert L. Ackerly, Washington, D. C., William M. Kunstler, New York City, and Lawrence Speiser, Washington, D. C., for plaintiffs.

Harry Alexander, Joseph M. Hannon, Frank Q. Nebeker and Gil Zimmerman, Asst. U. S. Attys., for defendants.

Before BAZELON, Chief Circuit Judge, FAHY,** Circuit Judge, and CORCORAN, District Judge.

FAHY, Circuit Judge.

In its early stages this case was thought to require the convening of a three-judge District Court under the mandate of 28 U.S.C. § 2282,[1] since the

** Circuit Judge Fahy became Senior Circuit Judge April 13, 1967.

1. Section 2282 provides:
An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

complaint, in seeking injunctive relief against appellees, alleged that Rule XI of the House of Representatives, the charter of the House Committee on Un-American Activities, was enacted by the Legislative Reorganization Act of 1946, 60 Stat. 812, and was unconstitutional. The constitutional question being deemed not insubstantial, a three-judge District Court was convened under the terms of 28 U.S.C. § 2284 which prescribes the procedure for and composition of a three-judge District Court required by Section 2282. At the outset this three-judge court requested memoranda on the issue whether "this case should proceed before this specially constituted three-judge court or be remanded to a single District Judge." Both parties promptly filed memoranda, but neither raised the question whether Rule XI was an "Act of Congress." Thereafter on April 14, 1967, defendants filed a "Supplement to Motion to Dismiss * * *," urging that Rule XI is a "Rule of Procedure adopted by the House of Representatives (acting singly)." The close reexamination of the genesis and status of Rule XI, prompted by defendants' "Supplement," has led us to conclude that Rule XI is not an "Act of Congress" as that term is used in Section 2282, that the activities of defendants as to which injunctive relief is sought by plaintiffs have been and are conducted under authority of a rule of the House of Representatives rather than under the authority of an Act of Congress, and that, therefore, the case is not one that comes within the provisions of Section 2282.

Plaintiffs' Bill of Complaint alleges that the Legislative Reorganization Act of 1946 enacts, *inter alia,* Rule XI of the Rules of the House of Representatives, referred to as the charter of the Committee, and that, as thus enacted the Rule is void on its face, including its origin, the setting within which the Committee has operated in the past, and as the Rule is applied to plaintiffs, in that it violates the Constitution, in particular Article I, Section 9, Clause 3, and Article III, as well as in other respects set forth.

Title I of the Reorganization Act is the part of the Act pertinent to this case. It is entitled "Changes in Rules of Senate and House" after which follows the subtitle, "Rule-making Power of the Senate and House." The title then contains the following unusual provision:

Sec. 101. The following sections of this title are enacted by the Congress:

(a) As an exercise of the rule-making power of the Senate and the House of Representatives, respectively, and as such they shall be considered as part of the rules of each House, respectively, or of that House to which they specifically apply; and such rules shall supersede other rules only to the extent that they are inconsistent therewith; and

(b) With full recognition of the constitutional right of either House to change such rules (so far as relating to the procedure in such House) at any time, in the same manner and to the same extent as in the case of any other rule of such House. [60 Stat. 814.]

A "Part 1" then provides the "Standing Rules of the Senate," including "Standing Committees of the Senate."

A "Part 2" provides "Rules of the House of Representatives," including "Standing Committees of the House of Representatives." Under the caption "Rule X," which is the first rule set forth, it is stated, "There shall be elected by the House, at the commencement of each Congress, the following standing committees:" "17. Committee on Un-American Activities, to consist of nine members." Rule XI provides the "Powers and Duties of Committees." In due course under this Rule comes "Committee on Un-American Activities." Its powers and duties are there set forth as follows:

"(A) Un-American activities.

"(2) The Committee on Un-American Activities, as a whole or by subcommittee, is authorized to make from time to time investigations of (i) the extent, character, and objects of un-American propaganda activities in the

United States, (ii) the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution, and (iii) all other questions in relation thereto that would aid Congress in any necessary remedial legislation.

"The Committee on Un-American Activities shall report to the House (or to the Clerk of the House if the House is not in session) the results of any such investigation, together with such recommendations as it deems advisable.

"For the purpose of any such investigation, the Committee on Un-American Activities, or any subcommittee thereof, is authorized to sit and act at such times and places within the United States, whether or not the House is sitting, has recessed, or has adjourned, to hold such hearings, to require the attendance of such witnesses and the production of such books, papers, and documents, and to take such testimony, as it deems necessary. Subpenas may be issued under the signature of the chairman of the committee or any subcommittee, or by any member designated by any such chairman, and may be served by any person designated by any such chairman or member. [60 Stat. 828–29.]

The Legislative Reorganization Act of 1946 only restates the rules pertaining to the House Un-American Activities Committee. The Committee achieved its standing committee status and first received its charter, as it presently reads, in House Resolution 5, 79th Cong., 1st Sess., 91 Cong.Rec. 10, 15 (1945). See also Watkins v. United States, 354 U.S. 178, 201–203, 77 S.Ct. 1173, 1 L.Ed.2d 1273.

We particularly note that Title I is headed "Changes in Rules of Senate and House," and states that it is enacted by Congress "[a]s an exercise of the rule-making power of the Senate and the House of Representatives, respectively, and as such they shall be considered as part of the rules of each House, respectively, or of that House to which they specifically apply", with recognition of the right of either House to change the rules relating to the procedure of such House, at any time or in the same manner and to the same extent as "in the case of any other rule of such House." This conforms with the provision of Article I, Section 5 of the Constitution: "Each House may determine the Rules of its Proceedings * * *" In contrast, Title II of the Act also bears upon the internal affairs of Congress, but makes no provision for amendment by either House and does not purport to be "[a]n exercise of the rule-making power of the Senate and the House of Representatives, respectively". Its provisions are denominated "Statutory Provisions." [2]

While the House was sitting as a Committee of the Whole House to consider the 1946 Act, Congressman Monroney, the floor leader, stated:

Mr. Chairman, I ask unanimous consent that the portions of the bill from line 12, page 5, to line 13, page 24, be considered as read and printed in the Record. That portion of the bill deals exclusively with the rules of the Senate over which the House exercises no real jurisdiction, and it would expedite consideration of the bill to treat it in this manner.

There was no objection to this procedure. 92 Cong.Rec. 10061–62. The Congressman also stated, "We are not touching the Senate rules, we are changing our rules. The Senate changes its rules at the same time." Id. at 10040.

Prior to the reading of Title I, Part 2 of the Bill before the Committee of

---

2. Title II, which is designated "Miscellaneous," has three parts—"Part 1—Statutory Provisions Relating to Congressional Personnel," "Part 2—Statutory Provisions Relating to Committees of Congress," and "Part 3—Provisions Relating to Capitol and Pages." 60 Stat. 834.

the Whole House, Congressman Celler inquired:

> Would we by the provisions embodied in this bill have the right to change the rules of the next Congress despite the fact that this bill was passed by the Senate and the House?

Congressman Monroney responded,

> No. [*sic*] It specifically recognizes the right of either House to change its rules at any time. We are merely doing it jointly for the purpose of convenience and clarification. The rules can be changed by the new Congress or by this Congress at any time.

Id. at 10064.

It appears, therefore, that though acting jointly in the Reorganization Act each House, insofar as Title I is concerned, was acting under its own authority to establish rules for the conduct of its own business.[3]

■ Thus these rules of the Reorganization Act would not appear to come within the meaning of an "Act of Congress" as that expression is used in 28 U.S.C. § 2282, in contrast with, *e. g.*, the "Federal Tort Claims Act," see footnote 3, supra. Section 2282 is not directed to the internal administrative procedures of the Senate or House governing, re-

spectively, the conduct of its own business.

The disposition of the Supreme Court not to enlarge the scope of Section 2282 readily appears in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644.[4] The Court recognized that there was a formal prayer for an injunction in plaintiff's amended complaint, but on the basis of stipulations entered into to "govern the course of the trial" the Court found that neither the parties nor the judge contemplated injunctive relief. Compare Idlewild Bon-Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794. Having thus disposed of the prayer for injunctive relief, the Court stated that the declaratory relief also requested in this case did not come within Section 2282. Moreover, the Court referred to Section 2282 as having been enacted—like Section 2281 which is applicable to an attack upon state legislation—"to prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order," or, as stated elsewhere in the opinion, the putting out of operation of "an entire statutory scheme." 372 U.S. 154, 155, 83 S.Ct. 554, 9 L.Ed.2d 644.[5]

3. The Legislative Reorganization Act of 1946 grew out of 18 months of preparation, study, and hearings by the Special Committee on the Reorganization of Congress, a joint committee of the House and Senate. 92 Cong.Rec. 10039. The reorganization of the committee system, Title I, is only a small portion of the Special Committee's proposal. The other parts of the proposal, which were also intended "to streamline" congressional operations, were adopted as an exercise of Congress' legislative authority. Title II of the Act is designated "Miscellaneous," see note 2; Title III is entitled "Regulation of Lobbying Act"; Title IV is entitled "Federal Tort Claims Act"; Title V is entitled "General Bridges Act"; and Title VI, the final title, is designated "Compensation and Retirement Pay of Members of Congress."

4. The Supreme Court also has indicated some hesitation to read Section 2282 literally. The Court continued Ex Parte Cogdell, 342 U.S. 163, 72 S.Ct. 196, 96

L.Ed. 181, on its docket in order to permit the Court of Appeals for the District of Columbia Circuit, in which the case was also pending, to determine in the first instance whether "congressional enactments affecting only the District of Columbia" came within Section 2282. Subsequently the parties dismissed their appeal in the Court of Appeals. See, however, Hobson v. Hansen, 252 F.Supp. 4 (D.D.C.), and Hobson v. Hansen, 265 F.Supp. 902 (D.D.C.), in both of which the problem of applicability of Section 2282 was considered only in relation to the substantiality of the constitutional question, without reference to whether or not the operation of an Act of Congress was involved.

5. The complementary nature and legislative purpose of Sections 2281 and 2282 were reaffirmed in Zemel v. Rusk, 381 U.S. 1, 7 n. 4, 85 S.Ct. 1271, 1276, 14 L.Ed.2d 179, where Kennedy v. Mendoza-Martinez, supra, is quoted at length.

The kinship between Sections 2281 and 2282 also appears from the Court's reference in Kennedy v. Mendoza-Martinez to Phillips v. United States, 312 U.S. 246, 250–251, 61 S.Ct. 480, 483, 85 L.Ed. 800. In *Phillips* it is said:

> The history of § 266 [now § 2281] * * *, the narrowness of its original scope, the piece-meal explicit amendments which were made to it * * *, the close construction given the section in obedience to Congressional policy * * *, combine to reveal § 266 not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such.

Moreover, in Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512, it is said:

> We hold that three judges are similarly not required when, as here, prior decisions make frivolous any claim that a state statute [permitting segregation of interstate transportation facilities] on its face is not unconstitutional. * * * The reasons for convening an extraordinary court are inapplicable in such cases, for the policy behind the three-judge requirement—that a single judge ought not to be empowered to invalidate a state statute under a federal claim—does not apply. The three-judge requirement is a technical one to be narrowly construed, Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800. The statute comes into play only when an injunction is sought "upon the ground of the unconstitutionality" of a statute. There is no such ground when the constitutional issue present is essentially fictitious.

And in Swift & Co. v. Wickham, 382 U.S. 111, 124, 128–129, 86 S.Ct. 258, 265, 268, 15 L.Ed.2d 194 (footnote omitted):

> * * * [T]he admonition that § 2281 is to be viewed "not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such," Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800, should be kept in mind.
>
> * * * * * *

Although the number of three-judge determinations each year should not be exaggerated,[26] this Court's concern for efficient operation of the lower federal courts persuades us to return to the Buder-Bransford-Case rule [Ex parte Buder, 271 U.S. 461, 46 S.Ct. 557, 70 L.Ed. 1036; Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249; Case v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552] thereby conforming with the constrictive view of the three-judge jurisdiction which this Court has traditionally taken. Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990; Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 54 S.Ct. 732, 78 L.Ed. 1318; Rorick v. Board of Commissioners, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242; Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800.

And see United States v. I. C. C., 337 U.S. 426, 443, 69 S.Ct. 1410, 93 L.Ed. 1451; Ayrshire Collieries Corp. v. United States, 331 U.S. 132, 136–137, 67 S.Ct. 1168, 91 L.Ed. 1391; Darlington v. Federal Housing Administration, 134 F. Supp. 337, 339 (E.D.S.C.), rev'd on other grounds, 352 U.S. 977, 77 S.Ct. 381, 1 L.Ed.2d 363.

In *Zemel* the Court held a three-judge court was properly convened and stated, The convening of a three-judge court in this case surely coincides with the legislative policy underlying the passage of § 2282 * * *. Appellant in this case does not challenge merely a "single, unique exercise" of the Secretary's authority, cf. Phillips v. United States, supra, 312 U.S. at 253, 61 S.Ct. at 484. On the contrary, this suit seeks to "paralyze totally the operation of an entire regulatory scheme," indeed, a regulatory scheme designed and administered to promote the security of the Nation.

Apart from the foregoing, yet fortifying the position there taken as to the inapplicability of Section 2282, House Rule XI, under which the Committee or Subcommittee functioned in the matters material to this case, was adopted as a Rule of the House, with a legal status which does not rest upon Title I of the Reorganization Act.[6] It is a Rule of Procedure adopted by the House of Representatives (acting singly) on January 4, 1965. H.Res. 8, 89th Cong., 1st Sess., 111 Cong.Rec. 21, 25. This resolution reads:

> *Resolved,* That the Rules of the House of Representatives of the Eighty-eighth Congress, together with all applicable provisions of the Legislative Reorganization Act of 1946, as amended, be, and they are hereby adopted as the Rules of the House of Representatives of the Eighty-ninth Congress,

with certain amendments the substance of which is not here material.

To the extent that the House of Representatives of the Eighty-ninth Congress "adopted" the terms of the Reorganization Act of 1946, specifically the powers of the House Un-American Activities Committee, it did so as an exercise of the authority of the House to make its own rules. The Un-American Activities Committee existed prior to the 1946 Act, first as an ad hoc and then as a permanent committee pursuant to resolutions of the House of Representatives. Since 1946, the House of Representatives for each of the eleven Congresses has passed its own rules. Acting singly, the House has also amended rules which appear in the Legislative Reorganization Act.[7] These unicameral actions by the House demonstrate its consistent interpretation of the Act of 1946, that is, the House of Representatives for each Congress still creates its own committees.

Though the Committee has stated that its authority rests upon both the Act and the rules, such statement, understandable as it is, does not constitute an analysis of the legal situation. And it is not a position advanced by the House itself or by the Congress. Indeed, it is quite inconsistent with the practice of the House. Rule XLII, the last rule of the House, provides:

> \* \* \* [T]he provisions of the Legislative Reorganization Act of 1946, as amended, shall govern the House in all cases to which they are applicable, and in which they are not inconsistent with the standing rules and orders of the House \* \* \*.

Lewis Deschler, Rules of the House of Representatives, H.R.Doc. No. 619, 87th Cong., 2nd Sess., 499. See also H.Res. 5, 83d Cong., 1st Sess., 99 Cong.Rec. 15, 24, which for the first time incorporates the terms of the Act in Rule XLII. Moreover, with the exception of the

---

6. Any decision as to the constitutionality of Rule XI might be decisive on the constitutionality of the 1946 Act, but the Supreme Court has stated:

    Section 3 [now 2282] does not provide for a case where the validity of an act of Congress is merely drawn in question, albeit that question be decided, but only for a case where there is an application for an interlocutory or permanent injunction to restrain the enforcement of an act of Congress. \* \* \* Had Congress intended the provision in section 3, for three judges and direct appeal, to apply whenever a question of the validity of an act of Congress became involved, Congress would naturally have used the familiar phrase "drawn in question," as in the first section of the act [now 28 U.S.C. 2403].

International Ladies' Garment Workers' Union v. Donnelly Garment Co., 304 U.S. 243, 250, 58 S.Ct. 875, 879, 82 L.Ed. 1316; quoted in part in Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435, and Pennsylvania Pub. Util. Comm. v. Pennsylvania R. Co., 382 U.S. 281, 282, 86 S.Ct. 423, 15 L.Ed.2d 324.

Here, of course, plaintiffs seek to enjoin the Committee from acting under either Rule XI or the 1946 Act, but they are not entitled to the latter relief if the Committee was operating only under its Rule.

7. E.g., H.Res. 8, 89th Cong., 1st Sess., 111 Cong.Rec. 21, 25, amending portions of Rule XI pertaining to the Committee on Rules and other provisions.

Eighty-third Congress, each Congress since 1946 has explicitly adopted "all applicable provisions of the Legislative Reorganization Act." This practice indicates that each incoming House of Representatives has considered itself to be writing on a clean slate, notwithstanding the Act of 1946.

■■■ Each house of Congress may, of course, amend its own rules without consulting the other body.[8] Such an amendment is clearly not an "Act of Congress" under Section 2282. No three-judge District Court could, therefore, have jurisdiction over an action to enjoin the enforcement, operation, or execution of such an amendment. It would be anomalous to hold that an action to enjoin conduct under some sections of the present rules of the House of Representatives is within the jurisdiction of a three-judge court solely because of the fact that they were restated in the Act of 1946, whereas an action involving a subsequently amended rule would not be within the purview of Section 2282.

It is also significant that the Supreme Court has in several opinions traced the authority of the Un-American Activities Committee to resolutions of the House rather than to the 1946 Act. In Watkins v. United States, 354 U.S. 178, 201–203, 77 S.Ct. 1173, 1187, 1 L.Ed.2d 1273, the history of the Committee is set forth, and at the latter page it is said (footnote omitted):

> On five occasions, at the beginning of sessions of Congress, it has made the authorizing resolution part of the rules of the House.[44]

Antecedents in the text and the sources in footnote 44 clearly reveal that the "it" in the above sentence is the House of Representatives alone, not the Congress. In Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 1087, 3 L.Ed.2d 1115 (footnote omitted), the Court refers to the challenge to "Rule XI of the House of Representatives, Eighty-third Congress, the charter of authority of the present Committee.[5]" The footnote also shows that the "charter" was a House Resolution, nothing more. And see Gojack v. United States, 384 U.S. 702, 706–707, n. 4, 86 S.Ct. 1689, 1693, 16 L.Ed.2d 870, including the sentence:

> It is the practice of the House to adopt its Rules—including the Rule which establishes the Un-American Activities Committee and defines the scope of its authority—at the beginning of each Congress. See, e. g., 109 Cong.Rec. 14, 88th Cong., 1st Sess. (1963); 101 Cong.Rec. 11, 84th Cong., 1st Sess. (1955).

■ True it is that as a matter of policy when an injunction is sought there would seem to be good reason for a three-judge court to pass on a constitutional challenge to the authority of a congressional committee. But when Section 2282 was enacted there was no occasion for seeking to protect the functioning of such a committee. The problems lay elsewhere, until now. Section 2282 was directed to the problems as they existed, the putting out of operation of an Act of Congress. If a three-judge court also should as a matter of policy be required to strike down a rule of a House under which a House committee operates Congress should address its attention to this new problem.

■ It is quite true also, as we have suggested, see note 6, supra, that were Rule XI to be held unconstitutional such a *holding* would undermine the constitutionality of the like provisions of the Reorganization Act of 1946 should they come under attack. But this would be because of the precedential authority of the holding. To come under Section 2282, the Act of Congress or operations under it must be the direct object of the injunction sought. Flemming v. Nestor, supra. It is the conduct of the defendants under House Rule XI that is the object of this suit. Even if authorized

---

8. See, e.g., H.Res. 5, 88th Cong., 1st Sess. (amendment of House Rule X so as to enlarge the membership of the Committee on Rules); S.Res. 5, 86th Cong., 1st Sess. (amendment of Senate Rule XXII so as to provide for adoption of cloture by two-thirds of those Senators present and voting).

by the Reorganization Act, Rule XI does not depend upon that Act, for Resolution 8 of the House of Representatives of the Eighty-ninth Congress alone was the grant of authority under which its committees were to operate.

■ Having concluded the case does not require a statutory three-judge District Court, there remains the problem of what we should do. Were a unanimous decision on the merits reached by the three judges, respected authority suggests they should render the decision. Swift & Co. v. Wickham, 230 F.Supp. 398 (S.D.N.Y.). This has an advantage. An appeal from that decision could be filed both in the Supreme Court and alternatively in the Court of Appeals. If the Supreme Court should decide the case not to be one for a statutory three-judge District Court it would dismiss the appeal. Review would then be available under the alternative appeal in the Court of Appeals. Swift & Co. v. Wickham, 382 U.S. 111, 129, 86 S.Ct. 258, 15 L.Ed. 2d 194. Or the Supreme Court could treat the appeal papers as an application to it for certiorari prior to Court of Appeals decision. Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed. 2d 762. But it is not necessary for the three judges to seek unanimity and to decide the case. In this jurisdiction the course heretofore adopted, which we now follow, is to dissolve the statutory three-judge court and remit the case to the District Judge to whom it was first presented, for disposition by him. Osage

Tribe of Indians v. Ickes, D.C., 45 F. Supp. 179, aff'd, 77 U.S.App.D.C. 114, 133 F.2d 47, cert. denied, 319 U.S. 750, 63 S.Ct. 1158, 87 L.Ed. 1704; Marcello v. Kennedy, D.C., 194 F.Supp. 748.

### ORDER

In accordance with the opinion filed herein September 11, 1967, the order of August 16, 1966, convening this three-judge District Court is vacated, the three-judge court is dissolved, and the case is remitted to District Judge Howard F. Corcoran for disposition.

BAZELON, Chief Circuit Judge, dissents.

BAZELON, Chief Circuit Judge (dissenting):

The majority concludes that the activities of the defendant are conducted under the authority of a rule of the House of Representatives rather than under the authority of an Act of Congress. I disagree. By incorporating Rule XI into the Legislative Reorganization Act of 1946, 60 Stat. 812, Congress established a dual authorization for the House Committee on Un-American Activities. The Committee itself has not hesitated to state that it derives its mandate from an Act of Congress as well as from rules of the House.[1] In my view, therefore, this case does involve an injunction to restrain enforcement of an Act of Congress and falls within the provisions of 28 U. S.C. 2282.[2] The fact that plaintiffs are also trying to enjoin enforcement of a

---

1. See, e.g., House Committee on Un-American Activities, Annual Report for the Year 1961, 145, stating that the Committee "has a statutory basis in Public Law 601—the Legislative Reorganization Act of 1946—as well as in the Rules of the House of Representatives." The report also spoke of "the purpose of *Congress* in the creation of this committee" and of the *"congressional* mandate." Ibid. [Emphasis added] See also House Committee on Un-American Activities, Annual Report for the Year 1963, 123.

   Every publication of the Committee begins with the recital that "The legislation under which the House Committee on Un-American Activities operates is Public Law 601, 79th Congress [1946]; 60 Stat. 812 * * *."

2. I think, therefore, that it is unnecessary to decide whether there may be circumstances in which a rule of the House or Senate could be regarded as an Act of Congress for purposes of § 2282. See Methodist Fed'n for Social Action v. Eastland, 141 F.Supp. 729 (D.D.C.1956), where a three-judge court took jurisdiction to decide a case challenging the validity of a Senate Concurrent Resolution. See especially opinion of Wilkin, J., dissenting on other grounds, id., at 736.

rule of the House does not render § 2282 inoperative.

The majority suggests that even if defendants' activities are conducted under the authority of the Legislative Reorganization Act, that statute is not the type of Act Congress had in mind when it required the convocation of a three-judge court. Section 2282, however, speaks of "any Act of Congress," and neither Congress nor the Supreme Court has provided us with sufficient guidance to carve out exceptions to it.

Accordingly, I dissent from my brethren's view that a three-judge court lacked jurisdiction in this case.