CALIFORNIA TEACHERS ASSOCIA-
TION, a California Corporation, on be-
half of its members, et al., Petitioners,

v.

NEWPORT MESA UNIFIED SCHOOL
DISTRICT, et al., Respondents.

Civ. No. 71–2243.

United States District Court,
C. D. California.

Oct. 7, 1971.

Peter T. Galiano, Richard C. Anthony, Burlingame, Cal., and Hirsch Adell and Warren, Adell & Miller, Los Angeles, Cal., for petitioners.

Adrian Kuyper, County Counsel of County of Orange and Iryne C. Black, Deputy County Counsel, Santa Ana, Cal., for respondents Newport Mesa Unified School District and others.

Ray T. Sullivan, Jr., County Counsel of County of Riverside, James H. Angell, Asst. County Counsel, Winlock W. Miller and Steven A. Broiles, Deputy County Counsels, for respondents Riverside Junior College District and others.

James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for United States, appearing as amicus curiae with permission of the Court.

HAUK, District Judge.

This matter arises upon the Complaint of the California Teachers Association on behalf of all of its members, and particularly the eight teachers named therein, against various school districts in the County of Orange and in the County of Riverside, State of California, seeking injunctive relief restraining the School Districts from imposing any wage and fringe benefit freeze on the salaries and benefits of the teachers; and from refusing to pay increased salaries and fringe benefits to which the teachers are allegedly entitled under individual written contracts between the School Districts and the teachers, as well as pursuant to 1971–1972 salary schedules previously adopted by the Districts. It is claimed, of course, that the wage and fringe benefit freeze was imposed by the School Districts in obedience to Presidential Executive Order No. 11615 of August 15, 1971, 36 Fed.Reg. 15727 (1971),[1] pursuant to the Economic Sta-

---

1.

THE PRESIDENT
EXECUTIVE ORDER 11615

Providing for Stabilization of Prices, Rents, Wages, and Salaries

WHEREAS, in order to stabilize the economy, reduce inflation, and minimize unemployment, it is necessary to stabilize prices, rents, wages and salaries; and

WHEREAS, the present balance of payments situation makes it especially urgent to stabilize prices, rents, wages, and salaries in order to improve our competitive position in world trade and to protect the purchasing power of the dollar:

NOW, THEREFORE, by virtue of the authority vested in me by the Constitution and statutes of the United States, including the Economic Stabilization Act of 1970 (P.L. 91–379, 84 Stat. 799), as amended, it is hereby ordered as follows:

Section 1. (a) Prices, rents, wages, and salaries shall be stabilized for a period of 90 days from the date hereof at levels not greater than the highest of those pertaining to a substantial volume of actual transactions by each individual, business, firm or other entity of any kind during the 30-day period ending August 14, 1971, for like or similar commodities or services. If no transactions occurred in that period, the ceiling will be the highest price, rent, salary or wage in the nearest preceding 30-day period in which transactions did occur. No person shall charge, assess, or receive, directly or indirectly in any transaction prices or rents in any form higher than those permitted hereunder, and no person shall, directly, or indirectly, pay or agree to pay in any transaction wages or salaries in any form, or to use any means to obtain payment of wages and salaries in any form, higher than those permitted hereunder, whether by retroactive increase or otherwise.

(b) Each person engaged in the business of selling or providing commodities or services shall maintain available for public inspection a record of the highest prices or rents charged for such or similar commodities or services during the 30-day period ending August 14, 1971.

(c) The provisions of sections 1 and 2 hereof shall not apply to the prices charged for raw agricultural products.

Sec. 2. (a) There is hereby established the Cost of Living Council which shall act as an agency of the United States and which is hereinafter referred to as the Council.

(b) The Council shall be composed of the following members: The Secretary of the Treasury, the Secretary of Agriculture, the Secretary of Commerce, the Secretary of Labor, the Director of the Office of Management and Budget, the Chairman of the Council of Economic Advisers, the Director of the Office of Emergency Preparedness, and the Special

bilization Act of 1970, P.L. 91–379, 84 Stat. 799, Title II (1970), as amended P.L. 92–15, 85 Stat. 38 (1971).[2] And it is charged that this Executive Order

Assistant to the President for Consumer Affairs. The Secretary of the Treasury shall serve as Chairman of the Council and the Chairman of the Council of Economic Advisers shall serve as Vice Chairman. The Chairman of the Board of Governors of the Federal Reserve System shall serve as adviser to the Council.

(c) Under the direction of the Chairman of the Council a Special Assistant to the President shall serve as Executive Director of the Council, and the Executive Director is authorized to appoint such personnel as may be necessary to assist the Council in the performance of its functions.

Sec. 3. (a) Except as otherwise provided herein, there are hereby delegated to the Council all of the powers conferred on the President by the Economic Stabilization Act of 1970.

(b) The Council shall develop and recommend to the President additional policies, mechanisms, and procedures to maintain economic growth without inflationary increases in prices, rents, wages, and salaries after the expiration of the 90-day period specified in Section 1 of this Order.

(c) The Council shall consult with representatives of agriculture, industry, labor and the public concerning the development of policies, mechanisms and procedures to maintain economic growth without inflationary increases in prices, rents, wages, and salaries.

(d) In all of its actions the Council will be guided by the need to maintain consistency of price and wage policies with fiscal, monetary, international and other economic policies of the United States.

(e) The Council shall inform the public, agriculture, industry, and labor concerning the need for controlling inflation and shall encourage and promote voluntary action to that end.

Sec. 4. (a) The Council, in carrying out the provisions of this Order, may (i) prescribe definitions for any terms used herein, (ii) make exceptions or grant exemptions, (iii) issue regulations and orders, and (iv) take such other actions as it determines to be necessary and appropriate to carry out the purposes of this Order.

(b) The Council may redelegate to any agency, instrumentality or official of the United States any authority under this Order, and may, in administering this Order, utilize the services of any other agencies, Federal or State, as may be available and appropriate.

(c) On request of the Chairman of the Council, each Executive department or agency is authorized and directed, consistent with law, to furnish the Council with available information which the Council may require in the performance of its functions.

(d) All Executive departments and agencies shall furnish such necessary assistance as may be authorized by section 214 of the Act of May 3, 1945 (59 Stat. 134; 31 U.S.C. 691).

Sec. 5. The Council may require the maintenance of appropriate records or other evidence which are necessary in carrying out the provisions of this Order, and may require any person to maintain and produce for examination such records or other evidence, in such form as it shall require, concerning prices, rents, wages, and salaries and all related matters. The Council may make such exemptions from any requirement otherwise imposed as are consistent with the purposes of this Order. Any type of record or evidence required under regulations issued under this Order shall be retained for such period as the Council may prescribe.

Sec. 6. The expenses of the Council shall be paid from such funds of the Treasury Department as may be available therefor.

Sec. 7. (a) Whoever willfully violates this Order or any order or regulation issued under authority of this Order shall be fined not more than $5,000 for each such violation.

(b) The Council shall in its discretion request the Department of Justice to bring actions for injunctions authorized under Section 205 of the Economic Stabilization Act of 1970 whenever it appears to the Council that any person has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any regulation or order issued pursuant to this Order.

THE WHITE HOUSE,
 *August 15, 1971.*

(s) Richard Nixon
Executive Order No. 11615, 36 Fed.Reg. 15727, August 17, 1971.

2.

### TITLE II—COST OF LIVING STABILIZATION

§ 201. Short title

This title may be cited as the "Economic Stabilization Act of 1970".

§ 202. Presidential authority

The President is authorized to issue such orders and regulations as he may

deem appropriate to stabilize prices, rents, wages, and salaries at levels not less than those prevailing on May 25, 1970. Such orders and regulations may provide for the making of such adjustments as may be necessary to prevent gross inequities.

§ 203. Delegation

The President may delegate the performance of any function under this title to such officers, departments, and agencies of the United States as he may deem appropriate.

§ 204. Penalty

Whoever willfully violates any order or regulation under this title shall be fined not more than $5,000.

§ 205. Injunctions

Whenever it appears to any agency of the United States, authorized by the President to exercise the authority contained in this section to enforce orders and regulations issued under this title, that any person has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any regulation or order under this title, it may in its discretion bring an action, in the proper district court of the United States or the proper United States court of any territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. Upon application of the agency, any such court may also issue mandatory injunctions commanding any person to comply with any regulation or order under this title.

§ 206. Expiration

The authority to issue and enforce orders and regulations under this title expires at midnight February 28, 1971, but such expiration shall not affect any proceeding under section 204 for a violation of any such order or regulation, or for the punishment for contempt committed in the violation of any injunction issued under section 205, committed prior to March 1, 1971.

Approved August 15, 1970.

INTEREST RATES AND ECONOMIC STABILIZATION

*For Legislative History of Act, see p. 661.*
PUBLIC LAW 92–15; 85 STAT. 38
[H. R. 4246]

An Act to extend certain laws relating to the payment of interest on time and savings deposits and economic stabilization, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That:*

EXTENSION OF AUTHORITY FOR THE FLEXIBLE REGULATION OF INTEREST RATES ON DEPOSITS AND SHARE ACCOUNTS IN FINANCIAL INSTITUTIONS

Section 1. Section 7 of the Act of September 21, 1966, as amended (Public Law 91–151; Public Law 92–8),[70] is amended by striking out "1971" and inserting in lieu thereof "1973".

REMOVAL OF TIME LIMITATION ON THE AUTHORITY OF THE PRESIDENT TO APPROVE CERTAIN VOLUNTARY AGREEMENTS

Sec. 2. The first sentence of section 717(a) of the Defense Production Act of 1950 (50 U.S.C.App. 2166(a))[71] is amended by striking out "714 and 719" and inserting in lieu thereof "708, 714, and 719".

PRICE AND WAGE CONTROLS

Sec. 3. (a) Section 202 of the Economic Stabilization Act of 1970 (Public Law 91–379)[72] is amended—

(1) by inserting "(a)" before the text of such section; and

(2) by adding at the end thereof a new subsection as follows:

"(b) The authority conferred on the President by this section shall not be exercised with respect to a particular industry or segment of the economy unless the President determines, after taking into account the seasonal nature of employment, the rate of employment or underemployment, and other mitigating factors, that prices or wages in that industry or segment of the economy have increased at a rate which is grossly disproportionate to the rate at which prices or wages have increased in the economy generally."

(b) Section 206 of such Act[73] is amended by striking out "May 31, 1971" and "June 1, 1971" and inserting in lieu thereof "April 30, 1972" and "May 1, 1972", respectively.

Approved May 18, 1971.

[70] 12 U.S.C.A. § 461 note.
[71] 50 U.S.C.A.App. § 2166(a).
[72] 1970 U.S.Code Cong. & Adm. News, p. 941.
[73] 1970 U.S.Code Cong. & Adm. News Pamph. No. 3, p. 340.

Economic Stabilization Act of 1970, P.L. 91–379, 84 Stat. 799, Title II, as amended by P.L. 92–15, 85 Stat. 38; 1970 U.S. Code Cong. & Adm.News, Vol. 1, p. 941, 91st Cong., 1971 U.S.Code Cong. & Adm. News, Pamph. No. 4, p. 600, 92d Cong.

as well as the statute under which it was issued are both violative of the Federal Constitution, with the alleged result that the teachers are entitled to injunctive relief not only by way of final judgment, but also by way of a temporary restraining order and a preliminary injunction *pendente lite,* to be issued by a three-judge Federal Court which the school teachers request be convened pursuant to Title 28 United States Code, Sections 2281, 2282, 2284.

The Court issued its Order to Show Cause on September 20, 1971, setting a hearing on the application for the temporary restraining order, the prayer for a preliminary injunction *pendente lite,* and the request for the convening of a three-judge court, for October 4, 1971. At the hearing all parties stipulated that the Court should expand the hearing to include the Motion to Dismiss the Complaint filed by the Riverside Respondents as well as the Order to Show Cause, the Anthony affidavit in support thereof, and the Orange Respondents' Return thereto, along with the respective points and authorities submitted by all parties, including the United States of America as Amicus Curiae.

Now having analyzed and considered all of the aforesaid pleadings, including the points and authorities submitted by the Assistant United States Attorney upon the Court's Certification to the United States Attorney General, pursuant to 28 U.S.C. § 2403 that the constitutionality of the Economic Stabilization Act of 1970 affecting the public interest has been drawn in question in this suit, and having heard and considered the arguments and further points and authorities made and submitted by counsel for Petitioners, Respondents and Amicus Curiae at the said hearing, the Court now renders its Decision and Order Denying the application for a temporary restraining order and the prayer for a preliminary injunction *pendente lite;* denying the request for a three-judge court; and dismissing the Complaint with leave to amend.

At the outset and without belaboring the matter at too great length, we ask ourselves what are the guidelines by which we are to convene or not to convene a three-judge Federal Court. It has been said by the Fifth Circuit that except for situations in which there can be absolutely *no doubt at all* that there is no constitutional issue, the request for a three-judge court must be granted. Jackson v. Choate, 404 F.2d 910, 912–913 (5th Cir. 1968). But despite the protestations of Chief Judge Brown in *Jackson* that this is the better course, he does admit that it inevitably leads to unwarranted expenditures of judicial energy. And it has been rejected in other Circuits. The Third Circuit, through Chief Judge Biggs, refused to adopt the Fifth Circuit's "no-doubt-at-all" test, and holds that when an application is made which might require adjudication by a three-judge court, both the district judge and the chief judge of the circuit, each acting separately, must perform the judicial function of judging and concluding, as a matter of law, whether the pending case raises a substantial constitutional issue and therefore requires three judges for its adjudication. Miller v. Smith, 236 F.Supp. 927, 933 (E.D.Penn. 1964).

The First Circuit, speaking through Chief Judge Aldrich, has stated what we believe to be the correct rule. Judge Aldrich discusses both the Third and the Fifth Circuit views and, rejecting the Fifth Circuit's "no-doubt-at-all" test, holds that "in determining whether a complaint alleges a case appropriate for a three-judge court, the district judge performs a judicial, as distinguished from a ministerial, function," and accordingly, he must ascertain whether the "request possesses a reasonable degree of legal merit." But contrary to the Third Circuit's view, Judge Aldrich goes on to say that once the district judge finds that a three-judge court should be convened, and once the request has been formally made by the district judge, then the chief

judge's duty is "solely ministerial" for the reason that "it is the district judge's case, 28 U.S.C. § 2284(1), whereas unless the chief judge designates himself, his contact with the case is merely ephemeral." Merced Rosa v. Herrero, 423 F.2d 591, 593 (1st Cir. 1970).

Moreover, we must always proceed with great caution and reluctance in reviewing the request for a three-judge court since the statute authorizing this unusual tripartite bench is to be treated "not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941).

As *Phillips* points out, a three-judge court "entails a serious drain upon the federal judicial system." 312 U.S. at 250, 61 S.Ct. at 483. And as Mr. Justice Frankfurter observed in Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 92–93, 80 S.Ct. 568, 579, 4 L.Ed.2d 568 (1960) (dissenting opinion) quoted with approval by Mr. Justice Harlan in Swift and Co. v. Wickham, 382 U.S. 111, 128, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965):

> "[T]he convening of a three-judge trial court makes for dislocation of the normal structure and functioning of the lower federal courts, particularly in the vast non-metropolitan regions; and direct review of District Court judgments by this Court not only expands this Court's obligatory jurisdiction but contradicts the dominant principle of having this Court review decisions only after they have gone through two judicial sieves. * * * *"

Thus proceeding with the care and circumspection directed by the Supreme Court, we scrutinize the Complaint here in the light of the guidelines which under recent decision are decisive:

(a) Does the complaint pose any substantial attack upon the constitutionality of the Statute itself or the President's Executive Order? Ex Parte Poresky, 290 U.S. 30 [54 S.Ct. 3, 78 L.Ed. 152] (1933), reh. denied, 366 U.S. 922 [81 S.Ct. 1090, 6 L.Ed. 2d 245] (1961); Brotherhood of Locomotive Firemen and Enginemen v. Certain Carriers, [118 U.S.App.D.C. 100] 331 F.2d 1020 (D.C.Cir. 1964), cert. denied, 377 U.S. 918 [84 S.Ct. 1181, 12 L.Ed.2d 187] (1964); Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129 (2d Cir. 1967), cert. denied, 389 U.S. 839 [88 S.Ct. 63, 19 L.Ed. 2d 102] (1967).

(b) Does the complaint seek injunctive relief against a Federal officer or agency engaged in the enforcement, operation or execution of the Economic Stabilization Act of 1970? Ex Parte Collins, 277 U.S. 565 [48 S.Ct. 585, 72 L.Ed. 990] (1928); Ex Parte Bransford, 310 U.S. 354 [60 S.Ct. 947, 84 L.Ed. 1249] (1940).

(c) Is the enforcement, operation or execution of the Economic Stabilization Act of 1970 the direct object of the requested injunctive relief? Krebs v. Ashbrook, 275 F.Supp. 111 (D.D.C.1967), aff'd [132 U.S.App.D.C. 176] 407 F.2d 306 (D.C.Cir. 1968), cert. denied, 393 U.S. 1026 [89 S.Ct. 619, 21 L.Ed.2d 570] (1969).

## NO SUBSTANTIAL CONSTITUTIONAL ATTACK

As a threshold issue this Court must first determine whether or not a "substantial constitutional question" has been raised by the Petitioners contentions hereinafter stated. Green v. Kennedy, 309 F.Supp. 1127 (D.D.C.1970); Carlough v. Finch, 309 F.Supp. 1025 (S.D.Fla.1969); Veen v. Davis, 326 F. Supp. 116 (C.D.Cal.1971).

Petitioners have raised five grounds for challenging the constitutionality of the act in question, all of which we find are plainly insubstantial.

*1. Due Process—Fifth Amendment*

Petitioners commence their attack with the allegation that the implementation of the Economic Stabilization Act of 1970 has unlawfully de-

prived them of the wage increases to which they are entitled without a proper hearing, and is thus a violation of due process under the Fifth[3] and Fourteenth[4] Amendments. Petitioners' reliance upon the Fourteenth Amendment is obviously misplaced and worthy of no comment except to note that it applies only to the States and not the Federal Government. Turning to the Fifth Amendment, it is undeniable that while it does forbid the taking of property or the deprivation of it without due process, the prohibition refers only to direct appropriation of an individual's property. Laycock v. Kenney, 270 F.2d 580, 592 (9th Cir. 1959), cert. denied, 361 U.S. 933, 80 S.Ct. 373, 4 L.Ed.2d 355 (1960). Here there has been no direct appropriation of Petitioners' property by the Government. Any hardship caused Petitioners by the Economic Stabilization Act of 1970 is not prohibited by the Fifth [or Fourteenth] Amendments which have "never been supposed to have any bearing upon or to inhibit laws that indirectly work harm and loss to individuals." Knox v. Lee, 79 U.S. 457, 551, 20 L.Ed. 287 (1870). Even if there had been here a direct appropriation of Petitioners' property by the Government, it is well settled that one may be deprived of property by summary Federal Administrative action taken without a hearing when such action is essential to protect a vital governmental interest. Ewing v. Mytinger & Casselberry Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947); Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944). There can be no question that the Government's efforts in fighting inflation and stabilizing the economy are obviously directed to the protection and preservation of a most important governmental interest that can surely be characterized as vital to the lives and fortunes of the citizens of the United States, since there is no doubt that a stable economy free of runaway inflation is a basic foundation for stable government, essential to its self preservation and survival.

2. *Impairment of Contracts—Article 1, Section 10*

■ Petitioners' second contention is that the Economic Stabilization Act of 1970 is in violation of Article 1, Section 10[5] of the United States Constitution in that it impairs the contractual relationship between Petitioners and Respondents by "placing a temporary freeze" on the pay increases that allegedly are due certain Petitioners under "individual written contracts." At the outset, it must be understood that this constitutional prohibition against the impairment of contracts is not a restriction upon the Federal Government, which Petitioners' impliedly admit in citing Supreme Court cases which unequivocally affirm what is plain to read in Article 1, Section 10 of the Constitution itself. These cases simply find in the "due process" clause of the Fifth Amendment the constitutional imperative that the Federal Government may not impair the obligation of contracts validly entered into because to permit this would be tantamount to deprivation of property without due process of law. For example, the language of the Supreme Court in the Sinking Fund Cases, Union Pacific Railroad v. United States and Central Pacific Railroad v. Gallatin, 99 U.S. 700, at 718, 25 L.Ed. 496 (1878):

"The United States cannot any more than a State interfere with private

3.
 "No person shall * * * be deprived of * * * property, without due process of law." U.S.Const. amend. V.

4.
 "Nor shall any State deprive any person of * * * property, without due process of law." U.S.Const. amend. XIV.

5.
 "No State shall * * * pass any * * * Law impairing the Obligation of Contracts." U.S.Const. art. I, Section 10.

rights, except for legitimate governmental purposes. They are not included within the constitutional prohibition which prevents States from passing laws impairing the obligation of contracts, but equally with the States they are prohibited from depriving persons or corporations of property without due process of law."

■ And even subsuming through the due process clause, the rationale of the impairment of contract prohibition against the States to application against the Federal Government all contracts implicitly include the reservation by the Government (whether State or Federal) of its sovereign power to protect the vital interests of the people. City of El Paso v. Simmons, 379 U.S. 497, 506–508, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965); Home Building and Loan Ass'n v. Blaisdell, 290 U.S. 398, 428, 54 S.Ct. 231, 78 L.Ed. 413 (1934). As previously emphasized, a solid, stable economy is one of the most vital interests which any Government must safeguard for its people. The Supreme Court has held again and again that economic conditions may arise in which a temporary restraint of the enforcement of certain contracts will be consistent with the purpose and spirit of the contract clause and thus well within the range of the reserved power of a government to protect the interests of its people. Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921); Marcus Brown Holding Co. Inc. v. Feldman, et al., 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1921); Edgar A. Levy Leasing Co. v. Siegel, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595 (1922). There can be no doubt that the stabilization of the oscillating yet ever escalating inflation which has gripped this country recently is a justifiable, if not essential, exercise of Federal sovereign power. Any indirect contractual impairment such as here alleged, which may result is not unconstitutional since it is insubstantial when balanced against the governmental objective being pursued. City of El Paso v. Simmons, *supra;* Block v. Hirsh, *supra.*

### 3. *Federal Usurpation of State Power*

■ The third contention made by Petitioners is that the Economic Stabilization Act of 1970 is unconstitutional because it has usurped the powers reserved to the State of California by the Tenth Amendment of the United States Constitution.[6] Petitioner's argument, stated succinctly, is that the interpretation of the Act by Respondents has caused certain teachers to be paid salaries in violation of local school board rules and the laws of California. Petitioners are necessarily relying on the misconception that Congress did not have the power to enact the Economic Stabilization Act of 1970. It is neither within the purview, nor the purpose of this Court to make a declaration of which constitutional power or powers Congress exercised in enacting this legislation. Our proper role is simply to analyze this usurpation of power contention to determine whether a "substantial constitutional question" has been raised by it. We find the charge that this Act is outside the boundaries of Congress' power and is a usurpation of State authority to be without merit. Price control is one of the means available to the Congress for the protection and promotion of the welfare of the economy. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 394, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). To accomplish this goal of protecting the economy, Congress may act pursuant to any one of the abundant powers it possesses under the Constitution. Whether Congress enacted this statute pursuant to its "war power", Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); its power under the "commerce clause", Maryland v. Wirtz, 392

---

6.
"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S.Const. amend. X.

U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); its power under the "general welfare" clause, First Federal Savings & Loan Association of Wisconsin v. Loomis, 97 F.2d 831 (7th Cir. 1938); or any other power in its constitutional arsenal of powers, is of no concern to this court.[7]

As Chief Justice Stone so aptly put it in Yakus v. United States, 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944), holding the Emergency Price Control Act of 1942 to be constitutional:

"The Constitution as a continuously operative charter of government does not demand the impossible or the impracticable. It does not require that Congress find for itself every fact upon which it desires to base legislative action or that it make for itself detailed determinations which it has declared to be prerequisite to the application of the legislative policy to particular facts and circumstances impossible for Congress itself properly to investigate."

We are satisfied that Congress could have enacted the Economic Stabilization Act of 1970 under numerous specific powers of the many it possesses under the Constitution. We need not decide which power or powers Congress exercised to legislate the Act. Suffice it to say that the charge of Petitioners that Congress has usurped California State powers or functions in some way is without merit and does not raise "a substantial constitutional question."

---

7.

The vast authority which Congress possesses can best be appreciated by a reading of the United States Constitution, Article 1, Section 8, which sets forth the enumerated powers of Congress:

Section 8. The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

To borrow Money on the credit of the United States;

To regulate Commerce with foreign Nations, and among the several States and with the Indian Tribes;

To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures;

To provide for the Punishment of counterfeiting the Securities and current Coin of the United States;

To establish Post Offices and post Roads;

To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

To constitute Tribunals Inferior to the supreme Court;

To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations;

To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years;

To provide and maintain a Navy;

To make Rules for the Government and Regulation of the land and naval Forces;

To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;—And

To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof. U.S.Const. art. I, Section 8.

### 4. *Unconstitutional Delegation of Power—Article 1, Section 1.*

A further contention is made by Petitioners that the authority given to the President under the Economic Stabilization Act of 1970 is unconstitutional because it is a delegation of legislative power to the President and thus violates the United States Constitution, Article 1, Section 1.[8] The Supreme Court, in construing the Emergency Price Control Act of 1942, a statute very similar in form and content to the Economic Stabilization Act of 1970, held that it could find no unlawful delegation of legislative authority. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944). The further argument has been made by Petitioners that the Economic Stabilization Act of 1970 has allowed too great an amount of discretion to be placed in the hands of the President in his implementation of the Act. But the fact that a statute delegates broad powers to executives of an administrative agency to determine the details of any legislative scheme is no argument against its constitutionality. United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 574, 59 S.Ct. 993, 83 L.Ed. 1446 (1939). What was said in Lichter v. United States, 334 U.S. 742, 785, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948) is equally appropriate here:

"It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program. * * * Standards prescribed by Congress are to be read in the light of the conditions to which they are to be applied. 'They derive much meaningful content from the purpose of the Act, its factual background and the statutory context in which they appear' American Power & Light Co. v. S.E.C., 329 U.S. 90, 104, [67 S.Ct. 133, 141, 91 L.Ed. 103] (1946)"

The Economic Stabilization Act of 1970 authorizes the President to issue orders "to stabilize prices, wages and salaries. * * *" The Court can take judicial notice of the conditions of an unstable economy, rising prices, decreasing sales, monetary depreciation and all of the other indicia of a rapidly escalating inflation that had beset the economic life of the nation. Surely, the fact that Congress refrained from listing in the Act a detailed enumeration of all the dismaying and disconcerting events that precipitated Congressional action, is no cause for finding the Act unconstitutional. The legislative history of the Act as amended explicitly sets forth the purpose of the Act "to give the President maximum authority for fighting inflation."[9]

In delegating power to the executive and to the administrative, it is not necessary that Congress prescribe standards that can be applied with mathematical certainty. If Congress lays down an intelligible principle which prescribes a limited area of action, which in effect "canalizes" the field of delegated legislation then such legislative action is not a prohibited delegation of legislative authority. J. W. Hampton, Jr., Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928); Allegheny Airlines, Inc. v. Village of Cedarhurst, 238 F.2d 812, 816 (2nd Cir. 1956). The principle of "stabilizing prices, wages and salaries in fighting inflation" is obviously intelligible and the field of operation delegated to the President and by him to the adminis-

---

8. "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives." U.S.Const. art. I, Section 1.

9. Legislative History P.L. 92–15; 1971 U.S.Code Cong. and Adm.News, Pamph. No. 4, p. 662–3, 92d Cong.

trative agency and officers is definitely a narrow one. So we find no substantial constitutional question raised by Petitioners' fourth contention.

### 5. *Arbitrary Distinction—Lack of Due Process—Fifth Amendment.*

 Finally, Petitioners allege that the distinction made (for the purposes of freezing wages) between teachers physically working prior to August 15, 1971, and those who were not, is an arbitrary and capricious distinction and therefore a violation of the due process clause of the Fifth Amendment of the Constitution. Petitioner cites no authority for this position and we find no "substantial constitutional question" raised by it. Teachers who commenced work after August 15, 1971 are in exactly the same position as every other individual in the United States who began work after that date. They are restrained from receiving higher salaries or wages than were in effect during the 30 day period ending August 14, 1971.

 While it is true that legislation arbitrarily, capriciously and unreasonably discriminating against some and favoring others is unconstitutional, nevertheless, if a statute is uniform in the privileges or obligations imposed upon all members of a legitimate class to which it is applicable, no one belonging to another legitimate class to which the legislation is not applicable can complain of denial of due process or equal protection of the laws. As was said in Pfeiffer Brewing Co. v. Bowles, 146 F.2d 1006, 1007 (Em.Ct. of App. 1945) cert. denied, 324 U.S. 865, 65

S.Ct. 914, 89 L.Ed. 1421 (1945), in rejecting a similar argument to the one raised herein: "This we think is hornbook law."

### INJUNCTIVE RELIEF SOUGHT AGAINST IMPROPER PARTIES

 The lack of a "substantial constitutional question" is not the only infirmity which causes this Court to deny Petitioners' request for the convening of a three-judge court, and to dismiss the Complaint. In order properly to seek a three-judge court under 28 U.S.C. § 2282 prayer must be made for injunctive relief against the "enforcement, operation or execution of any Act of Congress." This, of course, means that Petitioners must seek to enjoin those agencies and officers who are specifically charged by the Economic Stabilization Act of 1970 with the "enforcement, operation or execution" thereof. Petitioners have failed to comply with this requirement. The Economic Stabilization Act of 1970 as amended grants primary authority to the President while expressly authorizing him to delegate any function under the Act as he may deem appropriate.[10] Under this authority, the President on August 15, 1970, established the Cost of Living Council and delegated to it all of the powers conferred on him by the Economic Stabilization Act,[11] and at the same time, he authorized the further delegation by the Council of its authority.[12] On August 17, 1971 the Cost of Living Council delegated to the Director, Office of Emergency Preparedness, responsibility and authority to implement, administer, monitor and en-

10. "The President may delegate the performance of any function under this title to such officers, departments, and agencies of the United States as he may deem appropriate." P.L. 91–379, Sec. 203 "Delegation", Footnote 2, *supra*.

11. "Except as otherwise provided herein, there are hereby delegated to the Council all of the powers conferred on the President by the Economic Stabilization Act of

1970." Executive Order No. 11615, Sec. 3(a), Footnote 1 *supra*.

12. "The Council may redelegate to any agency, instrumentality or official of the United States any authority under this Order, and may, in administering this Order, utilize the services of any other agencies, Federal or State as may be available and appropriate." Executive Order No. 11615, Sec. 4(b), Footnote 1, *supra*.

force the stabilization of prices, rents, wages and salaries.[13] Pursuant to this authority, the Director has issued various rules and regulations implementing his policies. Certain of these have allegedly affected the Petitioners herein.[14] However, Petitioners have failed to designate as Respondents any of these agencies and officers charged with the enforcement, operation or execution of the Economic Stabilization Act of 1970, namely, the President, the Cost of Living Council, the Director, Office of Emergency Preparedness or their officers and employees. Petitioners seek to enjoin the activities of County school boards, officers and officials who are not charged with the duty or responsibility of enforcing, operating or executing the Economic Stabilization Act of 1970. The application for a three-judge court is obviously unsupported and unsupportable.

## FEDERAL STATUTE NOT DIRECT OBJECT OF INJUNCTIVE RELIEF SOUGHT

■ Petitioners' Complaint contains a third, and equally fatal defect. In order to come within the purview of 28 U.S.C. § 2282, the enforcement, operation or execution of any Act of Congress must be the direct object of the injunction sought. Krebs v. Ashbrook, 275 F. Supp. 111 (D.D.C.1967), aff'd 132 U.S. App.D.C. 176, 407 F.2d 306 (D.C.Cir. 1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 619, 21 L.Ed.2d 570 (1969). To obtain a three-judge court, Petition-

ers must seek an interlocutory or permanent injunction directly against the enforcement, operation, or execution of the Economic Stabilization Act of 1970. Petitioners' complaint seeks to enjoin and restrain the Respondent County school districts, officers and officials from "imposing a wage and fringe benefit freeze on the salaries and benefits of Petitioners" and from "refusing to pay the increased salaries and fringe benefits" to which Petitioners are allegedly entitled under "individual written contracts." (Petitioner's Complaint, p. 19, lines 25–32). This tangential litigation by Petitioners for wages allegedly owed under written contracts with Respondents cannot conceivably come within the purview of a three-judge court since the litigation does not have as its direct object the enjoining of an Act of Congress, in this case, the Economic Stabilization Act of 1970.

To hold otherwise would open the Federal three-judge court to a massive flood of litigating wage earners seeking remuneration which had been "frozen" by employers in conformance with the mandate of the Economic Stabilization Act of 1970. Most surely, the three-judge court procedure was not instituted by Congress to determine simple contract disputes between individuals residing in the same State, no matter how cleverly in constitutional terms, the disputes may be couched.

13.
"1. There is hereby delegated to the Director, Office of Emergency Preparedness (hereinafter referred to as the Director), responsibility and authority to implement, administer, monitor and enforce the stabilization of prices, rents, wages and salaries as directed by section 1 of the Order.
2. There is hereby delegated to the Director the authority vested in the Council by sections 4(a), 5, and 7 of the Order."
Cost of Living Council Order No. 1, August 17, 1971, 36 Fed.Reg. 16215 (August 20, 1971)

14.
OEP Economic Stabilization Regulation No. 1, August 20, 1971, 36 Fed.Reg. 16515 (August 21, 1971); OEP* Economic Stabilization Circular No. 101, September 20, 1971, 36 Fed.Reg. 18739 (September 21, 1971); OEP Annex No. 1 to OEP Ec.Stab.Cir.No.13, September 15, 1971, 36 Fed.Reg. 18528 (Sept. 16, 1971); OEP Annex No. 1 to OEP Ec. Stab.Cir.No.101 September 20, 1971, 36 Fed.Reg. 18747 (Sept. 21, 1971).

## CONCLUSIONS

Having in mind the problems, the dangers and the possible duplication, or perhaps more accurately the *triplication* of work—three judges involved in all aspects of the litigation—as well as the wasted effort inherent in hastily and improvidently convened three-judge courts in situations where, as here, a single-judge court is properly if not mandatorily so, capable of handling and deciding the issues raised by the Complaint which either directly, or as here peripherally, attack the constitutionality of a Federal Statute, we conclude that we should not here certify to the Chief Judge of the Ninth Circuit the necessity of a three-judge court. On the contrary, we are convinced that this matter should proceed from beginning to end in a single-judge court because we cannot find any substantial constitutional issue raised in Petitioners' attack on the Federal statute or upon its enforcement, operation or execution.

Nor have the Petitioners joined the persons or parties who are essential to the convening of a three-judge court, namely the officers and agencies who are charged by the statute with the enforcement, operation and execution of the Economic Stabilization Act of 1970, to wit, the President, the Cost of Living Council, the Director, Office of Emergency Preparedness and their officers and employees.

And finally, the injunction which Petitioners seek does not and cannot conceivably have as its direct object the restraining of the enforcement, operation or execution of the Economic Stabilization Act of 1970.

Based upon the foregoing, the Court now makes and enters the following:

### ORDER

(1) The application for a temporary restraining order is hereby denied, and since the Court does not presently find any facts showing the actuality or possibility of irreparable injury to the Petitioners which would support a preliminary injunction *pendente lite*, the prayer for it is also hereby denied.

(2) The request for the convening of a three-judge court is denied for the reasons that upon the Complaint and all other pleadings before the Court at this moment we cannot find any substantial question of Federal unconstitutionality raised by the Petitioners, a mandatory prerequisite for convening a three-judge court under the cases and decisions binding this Court; that to the contrary it appears that there is actually and obviously no substantial question of Federal unconstitutionality involved herein; that the Complaint does not seek any relief against any of the Federal agencies or officers charged with the duty of enforcing, operating and executing the Economic Stabilization Act of 1970; and finally that the direct object of the injunctive relief sought is not the enforcement, operation or execution of the Economic Stabilization Act of 1970, but rather the actions of the Respondent School district, officers and officials in freezing wages and fringe benefits of school teacher Petitioners.

(3) The Complaint is, and each and every cause of action therein alleged are, hereby dismissed for lack of jurisdiction of this Court over the subject matter thereof and for failure to state a claim upon which relief can be granted, but with leave to file an amended complaint within 20 days of the filing of this Order.

(4) The Clerk of this Court shall forthwith file and enter this Order; serve it upon counsel of record for Petitioners, Respondents and Amicus Curiae; and send courtesy copies to the Honorable Philip C. Wilkins and the Honor-

able Aubrey E. Robinson, United States District Judges of the Eastern District of California and the District of Columbia.[15]

15.
 In this connection we should note that we are aware of two pending suits in the Federal Courts, one involving issues similar to those we are ruling upon here, and the other initiated by the California Teachers Association and member teachers against school districts, officers and officials of Kern County in a complaint which is virtually identical to the allegations before us. In each of these cases highly esteemed Brothers of the Federal Trial Bench have taken positions somewhat different than ours.

 The first case is pending in the United States District Court for the District of Columbia, based upon a complaint brought by the Amalgamated Meat Cutters and Butcher Workmen of North America in which United States District Judge Aubrey E. Robinson, finding "substantial constitutional questions" raised by the Complaint certified a statutory three-judge court which has been convened upon his request by the Chief Judge for the Court of Appeals for the District of Columbia. Amalgamated Meat Cutters and Butcher Workmen of North America v. Cost of Living Council, Office of Emergency Pre-

paredness, et al., Civil No. 1833–71 (D. D.C. September 30, 1971). The most immediately obvious distinction between this case before Judge Robinson and our own here is that there the complaint not only clearly raised substantial constitutional issues but named as defendants those agencies and officials charged by the Stabilization Act with the enforcement, operation and execution of the statute.

 In the second case, which is, of course, closer to home, United States District Judge Philip C. Wilkins of the Eastern District of California, even though considering virtually the same complaint with almost identical allegations, found that "it appears * * * that this action is a proper case to be heard and determined by a District Court of three judges under 28 U.S.C. Sec. 2284." But thereupon, and having been advised of our case here, Judge Wilkins ordered those proceedings continued until a determination of our proceedings here. California Teachers Association et al. v. Kern Joint Union High School District, et al., No. Civ. S–2192 (E.D.Cal. September 23, 1971).